## FLOREY'S EXECUTORS *vs*. FLOREY.

1. Upon questions of insanity, a witness whose acquaintance with the party has been such as to enable him to form a correct opinion of his mental condition, may not only depose to facts conducing to establish unsoundness of mind, but may also, in connection with those facts, give his own opinion upon the question of sanity or insanity.

2. The practice of admitting illegal evidence, and afterwards excluding it, is improper, because of the difficulty of eradicating from the minds of the jury the impression which the evidence may have made ; but, where the record shows a clear and unequivocal charge, withdrawing and excluding such evidence from the consideration of the jury, its admission is, at most, error without injury.

3. Fraud, or undue influence in procuring one legacy, does not invalidate other legacies which are the result of the free will of the testator ; but if the fraud or undue influence affects the whole will, though exercised by one legatee only, the whole will is void.

4. An insane delusion, existing in the testator's mind at the time of the execution of his will, as to the principal legatee being his son, renders the will void, if it is the offspring of that insane delusion.

5. Where the principal legatee, who was born in lawful wedlock, two or three years after his mother's marriage with the testator, bears the peculiar, distinctive marks of the negro, while his mother and the testator were white persons of fair complexion, the testator's belief that the legatee was his son, is admissible evidence for the purpose of showing mental delusion on this particular subject.

ERROR to the Court of Probate of Shelby.

The plaintiffs in error, as executors of Gustavus Florey, deceased, propounded for probate a paper, purporting to be the last will and testament of their testator, the validity of which was contested by Edward Florey, "as brother and next of kin

to the testator," on the grounds of fraud, undue influence, and because the testator was not of sound and disposing mind and memory at the time of making said will.

On the trial of these issues, it was shown that the testator died on Sunday night. There was evidence showing, that, on the Tuesday night before his death, a paper was drawn up by one Lewis Sentile, which the decedent executed as his last will and testament, by which he gave to Edward G. Florey, whom he recognized as his son, a life estate in his property, with remainder to his children, if any, and in default thereof then to the two daughters of one Joseph A. Skinner; that he was satisfied with this up to the Friday evening before his death; that on Saturday John N. Cohill, one of the proponents, visited him, and advised him to send for a physician, to which the testator objected, but notwithstanding his objections, said Cohill went for Dr. John Singleton, and afterwards sent a negro for Dr. William Singleton, the other proponent, both of whom visited the testator between the hours of twelve and two o'clock that night, when, at the request of the testator, the paper in dispute was drawn up by Dr. John Singleton; that said paper was read to the testator, and was executed by him in the presence of two witnesses, and shortly afterwards, on the arrival of a third witness, it was again read to the testator, and by him acknowledged as his last will and testament, and was then attested by said last witness. By this will, the testator's entire estate is bequeathed to Edward G. Florey, whom he calls his son, for life, and at his death to be equally divided between Henrietta Skinner and Nancy Skinner, daughters of Joseph A. Skinner; and the proponents, said John N. Cohill and William Singleton, are appointed executors.

" One John W. Florey was offered as a witness for the contestant, who testified, that he had known the testator intimately for thirteen years, had lived close to him, and had several times stayed with him three weeks at a time; that he had gone with him several trips to Wetumpka, with a wagon; that he had good opportunities of knowing his habits, and the condition of his mind, and of discovering any evidences of mental alienation; that he went to the house of said Gustavus Florey on Saturday morning, the date of the will offered for probate, and found him in a dozing condition; that he was very low, and sinking;

Florey's Executors v. Florey.

had some fever ; he would doze off, and then wake up looking perfectly wild ; that he would call the negroes by name, and when they came to his bed, he would say nothing to them, unless they questioned him, and then he would reply in the affirmative to any question put to him ; that he waked up, and called Edward G., who had hold of him by his side, and said, "I suppose he is out drinking and frolicking with the negroes"; that his complexion was pallid, and his features sunken ; that he would endeavor suddenly to get up, and ask to be carried to the door, and, when carried there, he would sometimes want to go back, and at other times to be carried out of doors ; that he was sinking all day, and became speechless about ten or twelve o'clock on the same night, during which he died ; that he was about sixty years of age, and had been afflicted with rheumatism for several years before his death.

"On being asked to state his opinion, in connection with the facts to which he had testified, as to the sanity or insanity of the testator, at the time he executed the paper offered for probate, witness stated, that he was of opinion he was of unsound mind. The plaintiff objected to this question; but his objection was overruled, and he excepted. The contestant then asked the witness, if the testator was not in the full possession of all his faculties at the time he executed said paper, to state any facts which induced him to believe that there was a difference in the state of his mind at that time and when in health ; to which question the plaintiffs objected, but their objection was overruled, and they excepted."

Another witness for the contestant testified, that he was sent for on the day the said paper bore date, and asked to come to the testator's house ; that he reached the house immediately after the last witness had signed the will, and while the paper was being folded up; that he was met at the door by the proponent, William Singleton, and told "that he need not go in,—that the old man was nearly gone, and would not know him."— The plaintiffs objected to this evidence, but the court overruled the objection, and they excepted.

"When the judge came to charge the jury, all the declarations of the executors were excluded and withdrawn from the jury by the court, and all the acts of the executors excluded and withdrawn from them, except those acts which occurred at

the time the will was being executed, and constituting a part of the transaction.

"The plaintiffs asked the court to charge, that, if they believed from the evidence that there was undue influence on the part of any one of the legatees, and not as to the others, they must find the will void only as to those participating in said fraud; which charge the court refused, and the plaintiffs excepted.

"Proof having been given to the jury, tending to show that the said Gustavus Florey intermarried with the mother of the said Edward G. about the year 1816, and that some two or three years thereafter the said Edward G. was born; that the said Gustavus Florey has ever recognized and treated said Edward G. as his son; that the said Gustavus was a white man, of fair skin, and that the mother of said Edward G. was also of fair skin, and a white woman, while the said Edward G. was of dark skin, and mulatto color, with woolly or kinky hair, the defendant asked the court to charge the jury, that, if they believed from the evidence that, at the time the will was made, Gustavus Florey was under an insane delusion as to Edward G. being his son, and that the will was the offspring and result of such delusion, the will is void, and must be set aside; to which charge the plaintiffs objected, but their objection was overruled, and they excepted."

The rulings of the court upon the testimony, the charge given, and the refusal to charge as requested, are now assigned for error.

WHITE & PARSONS, for plaintiffs in error:

1. The facts set forth in the record, do not show that the witness, John W. Florey, had such a long and intimate acquaintance with the decedent, as authorized him to give his opinion as to his mental *status* at the time he executed this will.—Norris v. The State, 16 Ala. 776; Roberts v. Trawick, 13 *ib*. 84, 85.

2. A number of declarations and acts on the part of the executors, were permitted to be given in evidence to the jury; and when the court came to charge the jury, "all declarations and acts of the executors was excluded from the jury by the court, except those which occurred when the will was executed."

This was not sufficient to cure the error: nothing but an express charge from the court, that they must not regard the illegal evidence, will cure the error.—DeGraffenreid v. Thomas, 14 Ala. 688; 15 *ib.* 624 ; 12 *ib.* 824. That these declarations and acts were inadmissible, see Dennis, Strickland & Co. v. Chapman, 19 Ala. 29.

3. The charge asked should have been given. It is in strict accordance with the rule laid down, with regard to deeds, in the case of Anderson v. Hooks, 9 Ala. 704, viz., "A deed may be void in part, and stand good as to the residue." To avoid the will for this reason, it must appear that the remainder-men participated in it.—Stover v. Harrington, 7 Ala. 142. A will void as to the party procuring it, through fraud or undue influence, may be good as to other parties.—15 Law Lib. 145: Loveless on Wills, m. p. 271 ; Atkins v. Kron, 2 Iredell's Eq. R. 58. There was no evidence of fraud or undue influence on the part of Edward G. Florey, or of any other person in his behalf.

4. The charge given is erroneous, for many reasons : 1. Because it sets aside the whole will, and defeats the rights of the remainder-men, because the testator was under an insane delusion as to Edward G. being his son. Even if this were sufficient to defeat the legacy to him, it does not interfere with their rights; theirs was a vested remainder.—Pitts v. Curtis, 4 Ala. 350 ; 1 Roper on Legacies, pp. 489, 490 ; Billingsley v. Harris, 17 Ala. 214 ; Ward on Legacies (8 Law Lib.) 169 ; *ib.* 175, 176, 177 ; 2 Black. 166 ; 2 Pick. 243 ; 1 *ib.* 147 ; 5 *ib.* 528. The legal estate vests in the executors, and only an equitable estate in the legatee.—5 Paige 318. 2. A false reason given for a legacy does not, of itself, destroy it, unless there is fraud, from which it may be presumed that, if known, the legacy would not have been given.— Kennell v. Abbot, 4 Vesey 807 ; 1 Story's Equity, § § 182, 183 ; *Ex parte* Wollop, 4 Bro. C. C. 90. In any event, the property would have passed to Skinner's children, and not to the heir. The intention of the testator was, not to die intestate.—3 Pr. Wms. 20, and cases cited in note (b); 4 Vesey 804 ; 2 Pr. Wms. 308. The ground of the heir's title is, that whatever is undisposed of remains to him.—3 Wheat. 583 ; 9 Mod. 167 ; 3 M. & S. 300. The charge is objectionable, also, because it is couched

in language which appealed to the prejudice of every man on the jury, as to the paternity of Edward G. Florey; its necessary tendency was, to mislead the jury.—16 Ala. 61.

RICE & MORGAN, *contra :*

The first question, as to the admissibility of the testimony of John W. Florey, is covered by the decision in Norris v. The State, 16 Ala. 776, which is sustained by the recent case of Baldwin v. The State, 12 Missouri 235, and Stewart v. The State, 19 Ohio 307. The idea that the statements of this witness (that he had known the testator intimately for thirteen years, &c.), were mere opinions or conclusions, and not admissible to show the competency of the witness to give his opinion as to the sanity or insanity of the testator, is unsanctioned by law. Massey v. Walker, 10 Ala. 290 ; Head v. Shaver, 9 *ib.* 791.

The charge asked by the proponents was properly refused: it asserts a legal proposition which is untenable, viz., that a legacy is valid, if it is not procured by the undue influence of the legatee himself, although it may have been procured by the undue influence of some other person ; whereas the law is clear, that "no one can hold an interest obtained through the fraud (or undue influence) of another, any more than if the fraud were comitted by himself."—Bowers v. Johnson, 10 Sm. & Mar. 169 ; Meadows v. Smith, 7 Iredell's Eq. R. 7 ; Hunter & Thomas v. Tatum, 14 Ala 557. The charge was also objectionable for another reason : it entirely excluded from the jury the consideration of the principal question in the case, viz., whether the will was the offspring of insane delusion, and the evidence relating to that issue.—Nabors v. Camp, 14 Ala. 460; Mims v. Sturdevant, 16 *ib.* 154; Carlisle v. Hill, 16 *ib.* 398 ; Murray v. The State, 18 *ib.* 727 ; Ames v. Schuessler, 14 *ib.* 600.

The charge given affirms a clear proposition of law. There is no middle ground between capacity and incapacity to make a will.—McElroy v. McElroy, 5 Ala. 81. If the will was the offspring of an insane delusion, it was the result of incapacity to make a will.—Williams on Executors, vol. 1, pp. 23 to 30. If the will was void for any reason, it was void *in toto.*—Badger v. Phinney, 15 Mass. 364; Poth. 1, 13; 3 Hawks 469; 14 Ala. 557.

GOLDTHWAITE, J.—The objections taken by the plaintiffs in error to the testimony of the witness, John W. Florey, cannot be sustained. The rule, of late years, has been conclusively settled, that upon questions of insanity, a witness whose acquaintance with the party has been such as to enable him to form a correct opinion as to his mental condition, may not only depose to facts conducing to establish the unsoundness of his mind, but may also, in connection with those facts, give his own opinion upon the question of sanity or insanity.—Norris v. The State, 16 Ala. 776, and cases there cited; Baldwin v. The State, 12 Mo. 235; Stewart v. The State, 19 Ohio 307; Potts v. House, 6 Ga. 324. It was shown, in the present case, that the witness had been intimately acquainted with the deceased for thirteen years, and had frequently been at his house for weeks together; and under the influence of the rule we have stated, we do not entertain a doubt, that his opinion, as to the mental condition of the deceased, based upon the facts sworn to by him, was competent to go to the jury, in connection with those facts.

2. Neither can the objections made, in the court below, to the admission of the declarations of William Singleton, one of the persons named as executor, be sustained, for the reason that the bill of exceptions shows, that this evidence was, by the charge of the court, excluded and withdrawn from the consideration of the jury; and although the practice of admitting illegal evidence, and afterwards excluding it, is discountenanced, from its obvious tendency to work injustice, in consequence of the difficulty of eradicating from the minds of the jury the impression which the evidence may have made (Carlisle v. Hunley, 15 Ala.), yet, as the record shows a clear and unequivocal charge, excluding it from the consideration of the jury, however much we may condemn the practice, we cannot, under these circumstances, presume that any injury has been the result of its admission.

3. On the trial, the plaintiffs in error requested the court to charge, "that, if the jury believed from the evidence that undue influence was exercised on the part of any one of the legatees, and not as to the others, the will was void only as to those who participated in the fraud"; which was refused.

We were, at first, of the opinion that this charge should have been given; but more mature reflection has satisfied us, that there was no error in refusing it. We agree, that where a legacy has been given through undue influence, it does not necessarily have the effect of rendering the whole will void. It is in accordance with the dictates of reason, and the principles of natural justice, that fraud or undue importunity, on the part of one legatee, should not affect the other legacies which are the result of the free will of the testator. To this extent the authorities go.—Swinburne on Wills, 884; Trimlestown v. D'Alton, 1 Dow, N. S., 85. It is, however, equally clear, that if the fraud or undue influence on the part of one of the legatees affects the whole will, then no portion of it can stand.—1 Will. Ex. 39; Swin., Pt. 7, § 4, pl. 1. The charge, as requested, asserts the proposition, that, although the entire instrument may have been the result of undue influence on the part of one of the legatees, it is good as to all but the parties who exerted the influence. This proposition, as we have seen, cannot be sustained.

The correctness of the charge given by the court, that the will was void if it was the offspring of an insane delusion, existing at the time of its execution in the mind of the testator, as to Edward G. Florey being his son, depends, as we think, entirely upon the question, whether the evidence, as shown by the record, was of a character which would authorize the charge to be given. If there was any evidence, tending to show that Edward G. Florey was not, in fact, the son of the testator, and the belief that he was so was but the result of a mental delusion on his part, it was competent, however slight it may have been, to go to the jury; and it was their province, and theirs only, to determine the weight to which it was entitled. The testimony on this point tended to show, that while both the testator and his wife were white persons, Edward G. Florey was of mixed blood, and that he exhibited, plainly, the peculiar marks of the negro in his person—that his color was that of the mulatto, and his hair woolly. The physiological fact, that a white man cannot be the father of a mulatto child by a white woman, is, at the present day, as well settled as the opinion of scientific men can settle any question of that nature; and

we apprehend, that in cases of legitimacy, the presumption arising from a child being born in wedlock, might be rebutted by proof of this character. It follows, therefore, necessarily, upon these premises, that if the testator and his wife were white, and Edward G. Florey of negro blood, he could not have been their child—that the testator could not have been his father ; and if his blood was clearly evidenced by the distinctive and peculiar marks of the negro, we think the belief of the testator, in opposition to this evidence, was admissible, for the purpose of showing delusion upon this particular subject. The belief, it is true, might have been the result of ignorance, rather than delusion ; but so may a belief in witchcraft, and most other irrational or absurd opinions. Common observation and daily experience have fully demonstrated, that an irrational belief more frequently results from eccentricity, ignorance or association, than from insanity. Still, however, as irrationality is one of the results of derangement—one of the *indicia* by which it manifests itself—it follows, that either acts or opinions, which are in themselves irrational, are proper to be submitted to the jury, and are entitled to more or less weight according to circumstances. There are opinions so contrary to reason, that none but a person of unsound mind could entertain them ; and, on the other hand, there are those which, although irrational, may be attributed to the causes we have before assigned, rather than to derangement ; and in cases where the disease is not clearly and plainly marked, insanity, either partial or total, should not be predicated upon acts or opinions which may properly be referred to any other cause. If, however, partial insanity, or monomania, is established, and the will is the result of such insanity, the act is vitiated. This we understand to be the proposition asserted by the charge under consideration ; and its correctness, as a legal proposition, has been considered as settled, since the judgment of Sir John Nichol in the case of Dew v. Clark, 3 Add. 79 ; S. C., 2 Eng. Eq. Rep. 436. But upon this point, also, we would limit our decision to the operation of the rule as applicable to the whole will. It may be, that where the derangement is partial, and its results are confined to but one portion of the will; the

17

provisions which are not at all affected by such derangement would be valid. This question, however, we do not consider as presented upon the record, and we do not wish to be understood as intimating an opinion upon it. The charge which was given by the court went to the will as a *whole*, and in that aspect it was unquestionably correct.

It results from the views we have expressed, that the judgment must be affirmed.