EMBRY, Justice.
Mr. W.F. Whitfield, a widower, died on 27 November 1981. A will was found at his home after death which was submitted for probate by the named executor, Terry Burttram.
When the testator died, he had no children; he left surviving one older sister, Bessie Burttram, three nephews — Terry Burttram, Clayton Whitfield Burttram, and Jack Whitfield — and one niece, Sarah Burt-tram Hill. All these survivors are proponents of the will except for Jack Whitfield.
Jack Whitfield contested the will, alleging undue influence and improper execution. The case was transferred to circuit court, where it was tried before a jury.
FACTS
Relevant testimony will be related in the discussion of the various issues on appeal. Therefore, initially, we will present just a skeleton outline of the circumstances from which this case arose.
The undisputed testimony was that Whitfield had his sister, Bessie Burttram, accompany him to the office of an attorney in Ashville, Alabama, whom he had known for years, but who is now deceased, to make a will. Fred Whitfield signed the will in his *403 lawyer’s office, but it is undisputed that it was not witnessed there.
The will devised Fred’s house to his niece, Sarah Hill. It made certain monetary bequests, gave his automobile to Hoyt Hill, Sarah’s husband, and divided the remainder of the estate equally among his sister, Bessie Burttram, his nephews, Jack Whitfield (the contestant), C.W. Burttram, and Terry Burttram, and his brother, For-ney Whitfield. Forney predeceased the testator.
The jury found in favor of the proponents of the will and the trial court entered judgment ordering the will admitted to probate. A motion for new trial was denied and the contestant, Jack Whitfield, appeals that denial, contending primarily that the jury verdict was contrary to the overwhelming evidence.
As to that contention, we keep in mind the rule that verdicts are presumed to be correct, and no ground of a motion for new trial is more carefully scrutinized than that the verdict is against the weight of the evidence. Cooper v. Peturis, 384 So.2d 1087 (Ala.1980). Furthermore, this presumption of correctness is strengthened by the trial court’s denial of a motion for new trial. Walker v. Cardwell, 348 So.2d 1049 (Ala.1977).
The contestant presents a number of factual theories and contends the jury ignored the overwhelming evidence in support of those theories.
First, contestants argue that the testator’s signature was altered prior to the submission of the will to probate. The portion of the will that stirred this controversy is reproduced below:

The contestant presented testimony by C.D. Brooks, an expert examiner of questionable documents, that testator’s signature was altered. Brooks stated that the signature line on which testator’s signature appeared had been extended in ink, and that the word “Fred” had been written in front of the initial “W,” and that the “F” in the signature had been obliterated by a pen with ink different from that used in the original signature.
Brooks at first indicated the words “Fred” and “Whitfield” had been written by different persons. On cross examination, however, he stated that he had first seen the document only hours before trial, had not performed certain desirable tests *404 on the document, and that the testator could have written both the words “Fred” and “Whitfield.”
To the extent that Brooks’s testimony conflicts with testimony that the testator actually signed the will, the evidence sufficiently supports the jury’s determination that the will was signed by the testator and is also supportive of an inference it could have made that the testator had attempted to alter his signature so that it would conform to his name as it was misspelled throughout the will. Proponents of the will presented evidence that the testator’s name was W.F. Whitfield rather than Fred. W. Whitfield.
Assuming that the alterations to the signature were made by the testator at some time subsequent to the original execution, the markings do not affect the will’s validity.
In Calhoun v. Thomas, 274 Ala. 111, 145 So.2d 789 (1962), this court held that in a similar situation, markings on a will were an attempted codicil, and because the codicil was not attested pursuant to statutory requirement, it was ineffective. The court stated:
“In Barnewall v. Murrell, 108 Ala. 366, 18 So. 831, we held that if there are alterations or additions to a will, they do-not vitiate the instrument. If not made as the statute requires, they are mere nullities, and the will as it existed at the time of execution is unaffected in validity. ...”
274 Ala. at 114, 145 So.2d 789.
In such a circumstance, as here, the absence of attestation for the alteration simply has no consequence upon the will’s efficacy.
Next, contestant contends the will was procured by the undue influence of Bessie W. Burttram, the 85-year old sister of the testator. However, application of the facts as culled from the record shows that the jury was justified in determining there was no undue influence in connection with the testator’s will.
Undue influence must involve a moral coercion to the extent of destroying or impairing the free agency of the testator. Sanford v. Coleman, 418 So.2d 856 (Ala.1982). In Rabon v. Rabon, 360 So.2d 971 (Ala.1978), this court discussed the three-pronged test in determining whether a presumption of undue influence has been raised. Quoting Pruitt v. Pruitt, 343 So.2d 495 (Ala.1976), it stated:
“ ‘ * * * [The] evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will. * * *
360 So.2d at 972.
Regarding the first element, the “confidential relationship,” Sarah Hill did acknowledge on cross-examination that she would consider her relationship and her mother’s relationship with Fred a confidential relationship, but the jury also heard testimony which extensively described the relationship, and there was evidence upon which the jury could have rejected the presence of this element.
Regarding the “influence” of Bessie being dominant and controlling in her relationship with Fred, the record is not supportive of such a proposition. Instead, she was actually three years older than Fred, and the record is clear that Fred was independent, and acted according to his own mind. Fred lived alone and did not have a housekeeper, as he took care of his own house, cooking his own food. During the last year or two of his life, he did very little driving, and Sarah Hill would drive him to the doctor.
The third element, “undue activity” on the part of Bessie, or anyone else, in procuring the execution of the will, is also markedly absent. Although she was present during the conference with the attorney Gerald Swann, while Fred signed the will, and while the will was being attested, she did not at first even know the purpose of Fred’s visit to the attorney when they went, and the record is undisputed that she did not in any sense participate, influence, or suggest any particular method of disposition of his estate. The *405 testimony was that Fred asked Bessie to accompany him to attorney Gerald Swann’s office and that Fred and Bessie did not discuss the will during the trip to Swann’s office. Bessie sat beside Fred in Swann’s office (there was no waiting room), and Fred told him what he wanted and Swann took it down. Bessie testified she did not at any time make any suggestion to Fred as to how he would dispose of his estate, and knows of no one else who did. There is no evidence which indicates otherwise.
Third, contestant contends that a reversal is warranted because of a “fatal variance” between the pleadings and proof in that the proponents of the will introduced evidence showing that testator’s correct name was “William Fred Whitfield” after having previously identified the testator as Fred. W. Whitfield, as his name is incorrectly typed throughout his will. Such a contention is nullified by Rule 15(b), ARCP, providing for amendment of pleadings to conform to the evidence, where there has been a trial of the issue by express or implied consent of the parties. Failure to so amend “does not affect the result of the trial of these issues.” Therefore, any such “variance” cannot affect the result of this appeal. See Campbell v. Carl, 395 So.2d 480 (Ala.1981); Bischoff v. Thomasson, 400 So.2d 359 (Ala.1981); Mims v. Citizens Bank of Prattville, 372 So.2d 311 (Ala.1979).
Last, contestant contends that reversible error appears in the trial court’s failure to give his requested charges numbers 2, 3, 5, and 6. The record does not indicate that contestant properly preserved these alleged errors for appellate review. Rule 51, ARCP, requires that one who disputes a jury charge object and state the matters about which he objects before the jury retires. In the absence of objections to instructions given or refused on a point, such point is not preserved for review. Pepsi-Cola Bottling Co. of Dothan, Ala. v. Colonial Sugars, 423 So.2d 190 (Ala.1982); See Walker v. Dutton, 401 So.2d 32 (Ala.1981); Ward v. Southern Pine Elec. Coop, Inc., 401 So.2d 22 (Ala.1981).
For the above reasons, after a careful review of the record, we cannot conclude the jury’s verdict in favor of the proponents of the will was contrary to the evidence nor that the trial court erred in denying contestant’s motion for a new trial. Therefore, the judgment entered by that court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, AU MON and ADAMS, JJ., concur.