669 So.2d 836 (1995)
Erskin D. WARD, Jr.
v.
Lynda Johnson LITTLE, et al.
1931744.
Supreme Court of Alabama.
September 1, 1995.
Rehearing Denied November 3, 1995.
*837 Lamar C. Johnson and Wyman O. Gilmore, Jr. of Gilmore Law Office, Grove Hill, for Erskin D. Ward, Jr.
N.S. Hare, Jr. of Hare and Hare, Monroeville, guardian ad litem for Laura Frye, a minor.
J. Milton Coxwell, Jr. of Coxwell and Coxwell, Monroeville, for Lynda Johnson Little.
COOK, Justice.
Erskin D. Ward, Jr., appeals from a summary judgment entered in favor of Lynda Johnson Little and Laura Frye in this will contest wherein Mr. Ward contends that the testatrix, Lillie W. Carter, executed her will while under undue influence of the principal beneficiary of the will, Lynda Little, and the parents of the other beneficiary Laura Frye, Mary and James Frye.
Lillie Carter, a widow with no children, died on October 17, 1991. She had executed her last will and testament on July 26, 1991, leaving her estate to Lynda Johnson Little as principal beneficiary and Laura Frye as the other beneficiary. Erskin Ward, Carter's nephew, contested the will, contending that it was executed while Carter was under the undue influence of Lynda Little and the Fryes and contending that Carter lacked the testamentary capacity at the time to execute a new will. The trial court entered a summary judgment, rejecting both claims. Ward appeals the judgment insofar as it relates to the claim of undue influence.
Johnson and Frye's summary judgment motion was properly supported. In order to rebut that properly supported motion, Ward had to offer substantial evidence that Little and Frye were not entitled to a judgment as a matter of law. See Carruth v. Pittway Corp., 643 So.2d 1340, 1342 (Ala. 1994). With regard to undue influence, we have stated:
"Undue influence must involve a moral coercion to the extent of destroying or impairing the free agency of the testator. Sanford v. Coleman, 418 So.2d 856 (Ala. 1982). In Rabon v. Rabon, 360 So.2d 971 (Ala.1978), this court discussed the three-pronged test in determining whether a presumption of undue influence has been raised. Quoting Pruitt v. Pruitt, 343 So.2d 495 (Ala.1976), it stated:
"`"... [T]he evidence must establish: (1) a confidential relationship between a favored beneficiary and [the] testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will...."'"
"360 So.2d at 972."
Whitfield v. Burttram, 471 So.2d 401, 404 (Ala.1985). Therefore, in order to defeat the motion for summary judgment, Ward had to offer substantial evidence of a confidential relationship between Little and Carter; substantial evidence that Little was a favored beneficiary; substantial evidence that Little's influence was dominant in the relationship; and substantial evidence that undue activity on the part of Little resulted in Carter's execution of the will in question. The new will executed by Carter named Little as the principal beneficiary and, although Little was not related to Carter, Carter had referred to her as the child "we raised." Thus, Ward did offer substantial evidence that Little was a favored beneficiary and that Little had a confidential relationship with Carter.
Ward offered his own affidavit, as well as deposition testimony of Carter's doctor; both of them testified that Carter had been in deteriorating health and that she was easily influenced. Ward stated in his affidavit, in pertinent part:
"In the spring and summer of 1991, Lillie Carter's mental and physical health was rapidly declining. During this two-week period, every time I contacted Lillie Carter, it seemed as though Mary Frye was there. It soon reached a point where Mary Frye tried to prevent me from talking to Lillie Carter. Mary Frye went to *838 great trouble to make sure that I did not talk to Lillie Carter alone, outside of her presence. About this same time, Lillie Carter informed me that she had been `tipped off' that I was stealing from her. I confronted Mary Frye about this, but she denied trying to turn Lillie Carter against me.
"In July of 1991, Lynda Little came and stayed with Lillie Carter for some four days. During this four-day period, Lynda Little and Mary Frye put pressure on Lillie Carter to change her Will and leave everything to them. I did not find out about this pressure until later, when I was so informed by Lillie Carter. After having Lillie Carter along [sic], in a weakened mental and physical condition, they were able to convince her to change her Will. Lynda Little then personally drove Lillie Carter to a lawyer's office so she could do a new Will. Lynda Little never left Lillie Carter along [sic] while the new Will was discussed and being drafted. This new Will left everything to Lynda Little and Laura Frye, the daughter of Mary Frye.
"In addition, I found out that Lynda Little also took Lillie Carter to the bank to change safety deposit boxes."
C.R. at 84-85. Ward also offered the affidavit of Betty C. Lee, who stated as follows:
"I am the niece of Lillie Carter. I am the sister of Mary Frye. I have known Lillie Carter since I was a little girl. Lillie Carter has told me all of my life that she intended to leave all of her belongings to Erskin Donald Ward. She has stated that he was just like a son to her and that everything that she owned would one day go to him. Prior to [Lillie Carter's brother] Fred's death she stated that she wanted everything to go to Erskin Donald Ward so that he could take care of Fred and that upon Fred's death everything would go to Erskin Donald Ward since he has taken care of my crippled uncle Fred.
"After Fred's death she informed me that everything would go directly to Erskin Donald Ward. She told me this as late as September or October 1991 some four to six weeks prior to her death."
C.R. at 166. In further support, Ward offered the affidavit of Willie Ward:
"My name is Willie E. Ward, and I reside at 6851 Pine Forest Road in Pensacola, Florida 32526.
"In October of 1991, I stopped by Lillie Carter's house, and she was very upset. She told me that James and Mary Frye and Linda Little were putting pressure on her to change her Will and that she had even signed documents. She was very confused and told me she did not know what she was doing. She asked me for my advice. I informed her that she should talk with her pastor or her attorney."
C.R. at 169.
Little had been visiting 77-year-old Lillie Carter for six days when Little drove Carter to an attorney's office, where Carter executed a new will. While her visit lasted less than a week, the evidence offered was conflicting as to whether Lillie Carter was, in fact, unduly influenced by Little and the Fryes to change her will.
Laura Frye contends that her bequest was not due to undue influence and, therefore, that, the summary judgment was appropriate as to her. We disagree.
"The governing rule is that if the entire will was the product of undue influence, the will as a whole is void, but if only a part of the devises and bequests were the result of undue influence and there are others the result of the voluntary and free will of the testator, only the former would be set aside and the latter may stand. Zeigler v. Coffin, [219 Ala. 586, 123 So. 22, 63 A.L.R. 942 (1929)], Lewis v. Martin, [210 Ala. 401, 98 So. 635 (1923)], Florey's Executors v. Florey, 24 Ala. 241 [(1854)]; Lyons v. Campbell, 88 Ala. 462, 7 So. 250 [(1890)]."
Shelton v. Gordon, 252 Ala. 187, 40 So.2d 95, 99 (Ala.1949).
"If fraud or undue influence, on the part of one or more devisees or legatees under the will, affected the whole will, then no portion thereof can be upheld. Florey's Ex'rs v. Florey, 24 Ala. 241, 248. However, if the evidence shows that the will was in part the effect of undue influence, and in *839 part the `act of the testator's own free will,' in such case the will is not wholly void, and the latter part must stand, although the will be annulled as to the former. [Citations omitted.]"
Lewis v. Martin, 210 Ala. 401, 98 So. 635, 647 (1923).
Ward offered substantial evidence tending to show that Lillie Carter was unduly influenced to execute a will leaving her estate to Little and Frye. Thus, the proponents of the will were not entitled to a judgment as a matter of law; the summary judgment was inappropriate.
For the foregoing reasons, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, SHORES, and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
I find no motion to strike the affidavit of Erskin D. Ward, Jr., and no objection based on the contention that that affidavit violates Ala.Code 1975, § 12-21-163. McMillian v. Wallis, 567 So.2d 1199, 1205 (Ala.1990). I find no substantial evidence of "active interference or undue activity" by a beneficiary in procuring the execution of the will, except in the affidavit of Ward. Arrington v. Working Woman's Home, 368 So.2d 851 (Ala.1979); Jackson v. Davis, 398 So.2d 242 (Ala.1981); Pruitt v. Pruitt, 343 So.2d 495 (Ala.1976); Windham v. Pope, 474 So.2d 1075 (Ala.1985).