1 So.2d 890

### COOK v. MORTON et al.

### 7 Div. 646.

Supreme Court of Alabama.

March 27, 1941.

Rehearing Denied May 15, 1941.

190

See, also, 236 Ala. 237, 181 So. 904.

Chas. F. Douglass, of Anniston, for appellant.

H. G. Bailey, of Boaz, Goodhue & Lusk, of Gadsden, and Knox, Liles, Jones & Blackmon, of Anniston, for appellees.

BOULDIN, Justice.

This appeal is from a final decree in a will contest in equity after probate. Code

of 1923, § 10637, amended by Acts 1931, p. 844.

The bill was filed by appellant, the daughter of decedent. The grounds of contest were mental incapacity and undue influence on the part of appellee, the wife of the testator, and beneficiary of the greater part of the estate.

Contestant demanded a trial by jury, a matter of right, under Code, § 10640.

On the jury trial on the law side of the court the issue of mental incapacity was submitted to the jury, but the affirmative charge was given for proponent on the issue of undue influence. A verdict sustaining the will followed.

A motion was filed in equity for a new trial by jury for alleged errors intervening on the trial at law. This motion, supported by a bill of exceptions, was overruled, and final decree sustaining the will and the probate thereof entered.

The main question for review, we think the only one, calling for special discussion, is the giving of the affirmative charge on the issue of undue influence. This charge was set out in the motion for new trial as one of the grounds for setting aside the verdict, but was not set out in the bill of exceptions.

Appellee makes the point that in this state of the record, this ruling can not be reviewed.

■ In such cases, this court on appeal reviews only the rulings in the equity cause, among them the ruling on motion for new trial filed in equity. A bill of exceptions disclosing the rulings in the trial at law on which such motion is based must be made part of the record for consideration of the chancellor in passing upon such motion. His ruling on the motion, supported by the bill of exceptions, becomes reviewable here. Ex parte Colvert, 188 Ala. 650, 65 So. 964; Karter v. East et al., 220 Ala. 511, 125 So. 655; Hale et al. v. Cox, 222 Ala. 136, 131 So. 233.

■ The motion within itself is not evidence that a charge set out therein was in fact given in the trial at law. While the statute makes given and refused charges a part of the record on appeal from judgments at law, appellee suggests such charges can not be considered a part of the record before the chancellor unless set out in the bill of exceptions in aid of the motion for new trial. Probably this would be the better practice, inasmuch as the record at law is not necessarily a part of the record on the equity side of the court.

■ But the record before us, certified as the record of proceedings in the equity cause, sets out these charges. In such case, we hold it too exacting a rule to require the refused charges to be set out in the bill of exceptions. We deal with the record here certified as giving verity to the fact that such charge was given, and was considered in passing upon the motion.

Dealing with the propriety of the affirmative charge on the issue of undue influence we have given the record a careful study, and reached a conclusion to the best of our understanding, in the light of governing principles in the premises.

The testator, Dr. D. A. Morton, of Boaz, Alabama, was admittedly a man of fine intelligence and high moral principles; a leader in promoting correct ideals in human relations; a man of positive character and decision in his personal affairs; the type of man who would not brook dictation in such matters.

He was twice married. He had several children by his first wife. Only his daughter, Mollie Cook, survived him. Some grandchildren survived.

He married Malinda Jane, his second wife, when a young woman of twenty-four. The children, or most of them, grew to maturity, in the family. There were no children of second marriage. Dr. Morton died at the age of seventy-four; his wife at that time was fifty-six, and his daughter, forty-seven. She was married, residing with her own family for many years past in Anniston, Alabama.

By the will the testator devised and bequeathed to his wife, in fee, the home in Boaz where they resided, other real and personal estate, aggregate somewhat more than half the entire estate in value. Including insurance payable to her, her total share aggregated approximately $15,000 in value. His daughter was devised two parcels of realty, his grandchildren other parcels, all of substantial value, and all bequeathed some share in personalty. Further details are not deemed material.

The will was executed January 25, 1936, while in a hospital at Gadsden, Alabama. Dr. Morton was a sick man; suffering from prostate trouble. The will was made several days after entering the hospital, while drainage operations and build-up treatment were had looking to a major

operation, which was performed a few days later. He recovered sufficiently to go about his regular business for some months, but gradually a more virulent condition developed, resulting in a second trip to the hospital in July, where he died two weeks later.

Appellant earnestly insists that the evidence discloses many of the indicia of undue influence, which, considered as a chain of circumstances, makes a case from which a reasonable inference of undue influence may be drawn; and, therefore, such issue was for the jury.

■ Confidential relations and activity in the execution of the will by a favored beneficiary therein are stressed. This, we have often declared, raises a prima facie presumption of undue influence, casting on proponent the burden of proof on this issue. Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am.St.Rep. 904; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; McQueen v. Wilson et al., 131 Ala. 606, 31 So. 94; Posey et al. v. Donaldson, 189 Ala. 366, 66 So. 662; Raney v. Raney, 216 Ala. 30, 112 So. 313.

■ Who is a favored beneficiary within this principle? One who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed.

■ That a wife has received more under the will than under the dower and homestead laws, and the laws of distribution in case of intestacy, is not the test. These laws deal with estates not disposed of by will, and proceed on the hypotheses, that the decedent will make a will, if such laws do not dispose of his estate as he desires. Indeed, our statutes deny to the husband the power to make a will giving the wife a less estate than she would take without a will. She need merely dissent therefrom, with recent statutory limitations. Code 1923, §§ 10593, 10594, Acts 1931, p. 840, Acts 1932, p. 307.

■ Undue influence involves moral coercion, the will of the wife, dominating the husband, destroying his free agency in that respect. A will is not to be stricken down on such ground unless facts justify a reasonable inference to such effect.

■ We think there is no evidence tending to show this wife, at any time, had dominating power over her husband. Evidence that he listened to her advice or importunity not to go out to lodge meetings at night was properly rejected. Such matters injected into a will contest would discount freedom in the family relations. Surely a husband is not to be treated as wanting in free agency, if he listens to the appeals of his wife, either in his own or in her interest. Her comfort and satisfaction are among the natural objectives of the marriage bond.

In this connection, we think there is no evidence of activity of the wife in the procurement of this will within the rule applicable to husband and wife.

Evidence discloses that the thought of making a will arose in a conversation with a lawyer friend, a brother Mason, who had called to see Dr. Morton at the hospital.

This friend, Mr. Sivley, testifies the testator asked his advice as to whether it was advisable to make a will; was advised it was a good thing for a man leaving an estate, but bad for the lawyer. An offer was made to draw a will for his friend without charge. Instructions were left to prepare notes outlining his property and the disposition to be made. Later he called and handed notes prepared by and in the handwriting of the testator, from which the will was prepared, read over by the testator, signed and witnessed. Whether the notes made part of the record are the same or all the notes furnished the draftsman, and whether the will conformed in every respect thereto is not of concern on this issue. Other evidence corroborates, and none contradicts the statements of Mr. Sivley.

Mrs. Morton was with her husband at the hospital. Evidence tends to show she called Mr. Sivley at the time he came for the notes. If so, this was in keeping with the plans already made by her husband. This is not activity condemned by the law. Sikes v. King et al., 224 Ala. 623, 141 So. 555. The evidence discloses no effort on her part to shape the terms of the will. She disclaims any such activity. Maybe, some evidence tended to show a conference between husband and wife in preparing the notes for the draftsman. If so, we have held this is not evidence of undue influence per se. Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808.

Evidence disclosed this will was not in keeping with prior declarations of the testator.

About the time he was going to the hospital, it appears his banker asked if he had made a will. He replied, in effect, that he had not, that he thought the law made as good disposition of his estate as he could. Other evidence discloses similar expressions to other friends, such as contemplating a life estate in the home. Certainly a long contemplated disposition of property, suddenly changed without occasion therefor, is admissible evidence, and if accompanied by other evidence tending to show undue influence, may call for a submission of the issue to the jury. How far this should go when the statement merely disclaims a purpose to make no will, depends on circumstances. Oftentimes, the decedent contemplates such adjustments while living that his estate may properly pass without a will. Who can say that the suggestion of Dr. Morton's banker may not have led to reflections upon the proper disposal of his estate in case of early death, and on to the consultation with his lawyer friend?

Concealment of the will is also urged by appellant.

This is based on the testimony of Mrs. Morton herself to the effect that her husband handed her the will just after it was executed, directing her to put it in a weekend handbag she had at the hospital and keep it; that she did so, and kept it in this bag until her husband's death. On reaching Boaz thereafter she handed it to the banker, where it was produced and read to the family. The same evidence which discloses this course also discloses the directions followed. Rather than tending to show dominion over her husband, does this not show a literal obedience to her husband's directions, one endangering loss or discovery greater than if put in bank or other safe place?

Under all the circumstances was it not most natural to say nothing of the will, unless her husband did so? It appears he did disclose having made a will to a friend. Mere distrust between wife and daughter, concern of each, lest the other get more than was thought to be due, can not do service in striking down the will of husband and father.

Indulging all reasonable inferences we can not affirm the evidence disclosed such activity on the part of the wife as to impose upon her the burden of rebutting a presumption of undue influence. In so holding, we are not unmindful that activity in the procurement of a will may be proven by circumstantial evidence, the same as any other fact. Hence, we can not find reversible error in giving the affirmative charge for proponent on that issue. East v. Karter, 218 Ala. 366, 118 So. 547; Kilgore v. Atkinson, supra; Bancroft v. Otis, supra; Posey v. Donaldson, supra; Raney v. Raney, supra; Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am.St. Rep. 33.

We find no reversible error in other rulings presented.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.