This is an appeal from a jury verdict in favor of the proponent in a will contest. The contest involved the will of Etta Clementine Maddox who resided in northwest Tuscaloosa County until her death on May 19, 1977.
In July, 1969, Mrs. Maddox executed a will leaving all of her estate to two nephews, James W. Walters and L.B. Hallman, share and share alike, and naming them co-executors. At the time the will was executed, Hallman had the authority to sign checks on an account opened by Mrs. Maddox at the Citizens Bank of Fayette. After they had a dispute, she removed Hallman's name from the checking account and named James W. Walters, the appellee, as the joint owner of the account with her. Further, Mrs. Maddox made Mrs. Walters, the appellee's wife, a joint owner of a savings account opened by Mrs. Maddox in the First National Bank of Fayette.
At a later date, Mrs. Maddox informed her sister, Ethel Reed Cannon, that she had made a new will leaving her estate to James W. Walters. After the death of Mrs. Maddox, Walters removed certain items of furniture from the home of Mrs. Maddox, withdrew the balance in the checking account, and Mrs. Walters withdrew the balance of the savings account.
The second will of Mrs. Maddox, which left all of her estate to the appellee, was admitted to probate on October 18, 1977, and letters testamentary were issued to the appellee as executor of the estate. On March 15, 1978, the appellants filed a civil action in the Circuit Court of Tuscaloosa County and named the appellee and his wife as defendants. Mrs. Walters was later dismissed from the case, and the case was submitted to the jury, which was instructed to, and did, return a verdict in favor of the proponent, the appellee. *Page 85 
The appellants raise the following issues on appeal:
(1) Did the trial court err in refusing to allow a witness to testify concerning a conversation the witness allegedly had with the testatrix on the ground that allowing her to testify would violate Code 1975, § 12-21-163 (The Alabama Dead Man's Statute);
(2) Did the trial court err in ruling as a matter of law that there was not a scintilla of evidence with respect to undue influence or a confidential relationship on the part of the appellee?
 I
The issue involving application of the Dead Man's Statute arose when the trial court sustained an objection to a question asked of the witness, Ethel Reed Cannon:
 Q. All right. Let me ask you this. Did she make any statement to you concerning making a will?
A. Yeah. She said —
MR. HENDRIX: Now, we object, if Your Honor please.
THE COURT: State your grounds, Mr. Hendrix.
 MR. HENDRIX: Well, of course, under the death statute, in other words, Mrs. Maddox is not here to review it. And this lady is one of the parties to this suit.
THE COURT: Sustain.
Mrs. Cannon was later permitted to testify, without objection, as follows:
 Q. All right. And did you later find out that she had made a second will, and made it over to Mr. Jim Walters?
A. In '77, I did.
 Q. All right. And was that after the funeral or before?
A. That happened when?
Q. January 4, 1977.
 A. '77 is when I really learned she had made the will — she told me.
* * * * * *
 Q. And what type of visit did you have on that occasion?
A. Well, she told me she had made the will.
* * * * * *
 Q. Did she say anything about the will she had made to Jim Walters?
A. Not that day, no.
 Q. Did she ever make a statement about the will she had made to Jim Walters?
A. Yeah, in our conversations, she would, along.
Q. What did she say about that?
 A. She said they agreed to take care of her as long as she lived, and see that she did not want for anything.
 Q. Did they promise her anything else? What other promises did they make?
 A. They said if she needed somebody to stay with her, they would get it.
 Q. All right. What was her summary? Did she say they were living up to their promises?
 A. She said they had not been — They was supposed to come that Sunday evening, but they had not been in four days. And I said, "Well, you should call them and tell them that you are much worse than you have been being." And she said, "They are supposed to come this evening."
 Q. And that is the last conversation you had with her?
 A. That is the last conversation I had with her, yeah.
Q. That's all.
* * * * * *
 Q. Yes. And you say that she told you about going to make this last will?
 A. She told me them and her had had the conversation, and she thought she would.
* * * * * *
 Q. But she did at the time, say that she intended to go make a will, leaving things to Jim and Vista; right?
A. Provided they took care of her, yeah.
It is apparent that evidence similar to that excluded was later elicited from Mrs. Cannon; therefore, the trial court's action in sustaining the objection to the appellants' *Page 86 
first attempt to elicit the testimony, even if error, was harmless error. Lawson v. Garrett, 286 Ala. 125, 237 So.2d 648
(1970); Decker v. Hayes, 282 Ala. 93, 209 So.2d 378 (1968); andGarrison v. Grayson, 284 Ala. 247, 224 So.2d 606 (1969).
 II
Appellants' second contention is that the trial court erred when it directed a verdict in favor of the proponent and instructed the jury to find for the proponent because the contestant had not shown by even a scintilla of evidence that a confidential relationship existed between Walters and Mrs. Maddox and that Walters exercised undue influence on Mrs. Maddox.
The scintilla rule applies in this state and a mere spark of evidence or an inference drawn from the evidence in support of the theory of the case against whom the affirmative charge is sought is sufficient to compel the denial of the affirmative charge. Smith v. Moore, 278 Ala. 173, 176 So.2d 868 (1965). In this case we must examine the evidence to determine whether there was, in fact, a scintilla of evidence on contestant's theory of undue influence and the existence of a confidential relationship.
In order to support a challenge to a will based upon undue influence the contestant has the burden of showing:
 (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will.
Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1976). Further, inPruitt, this Court stated:
 Whether the beneficiary, or one acting for him, was the dominant party in the relationship between the two is usually a question of fact, but in any case there must be some evidence of controlling influence over the testator's purposes by the other.
After an examination of the evidence presented by the contestant, we agree with the trial court that there was not a scintilla of evidence presented in support of the claim of undue influence. While there was evidence which might have supported speculation of undue influence, there was no evidence which would provide a reasonable inference. In Arrington v.Working Woman's Home, 368 So.2d 851 (Ala. 1979), this Court opined:
 The scintilla rule is not satisfied by speculation. Rota v. Combs, 267 Ala. 50, 99 So.2d 692 (1957). Moreover, evidence to support undue influence must provide at least a reasonable inference, rather than mere suspicion. Locke v. Sparks, 263 Ala. 137, 81 So.2d 670 (1955).
To have found undue influence in the present case, the jury would have had to engage in speculation since there was no evidence presented showing undue influence; therefore, the contestant failed to meet his burden of proof. The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.