This is an appeal by defendant Irene Davis Jackson from a judgment entered on a jury verdict in favor of the plaintiffs Alton Davis and Marion Davis Abbott in an action contesting the will of Clyde Davis. The jury found Irene Jackson, the decedent's sister, to have exerted undue influence on the decedent to procure the will in her favor. Plaintiffs were decedent's brother and alleged daughter. We reverse and remand.
The decedent had been living with his brother, Alton, until early July, 1978, when he moved in with his sister, Irene. He had his will drafted by a lawyer and signed it on August 16, 1978. He died from cancer on August 25, 1978. The will was admitted to probate on October 21, 1978.
The will named Irene Davis Jackson as executrix and made specific gifts of money or real property to the seven children and grandchildren of Irene and Louis Jackson; to a neighbor, Henrietta Jackson; to the *Page 243 
World Wide Church of God; and to Irene and Louis Jackson. Irene and Louis Jackson were the residuary legatees. The will did not mention Alton Davis or Marion Davis Abbott.
On April 17, 1979, the contestants filed a complaint against the eleven legatees under the 1978 will, charging insufficient execution, lack of mental or testamentary capacity of the testator, and undue influence by Irene Jackson, Mattie and Charles Penn (daughter and son-in-law of Irene and Louis Jackson), and by the World Wide Church of God. The court directed a verdict for all the proponents of the will except Irene Davis Jackson, and the contestants voluntarily dismissed their charges of insufficient execution and lack of capacity of the testator. Thus, the only issue for the jury was whether Irene Jackson exerted undue influence over the testator.
In her appeal, Mrs. Davis contends that the court erred in denying her motion for a directed verdict, as there was not a scintilla of evidence to support a jury verdict of undue influence. The record is devoid of any facts establishing proof of undue influence on the part of Mrs. Irene Jackson. The evidence concerning her conduct consisted of the following:
The testator moved from his brother, Alton's, house to that of his sister, Irene, and her husband, Louis Jackson, in early July, 1978. In mid-July, he purchased fifteen acres of land, which later was subject to his will. Mrs. Jackson cared for her brother, buying food, cooking, and feeding him. She washed for him and tended to his needs. She arranged for his transportation when necessary. He was increasingly thin and weakened by lung cancer. She had said that he was just like a baby. There is testimony that his weakness was physical and not mental, that he knew what he wanted and was determined to get it, and that his mind was "clear" and "very good" at the time he drafted and executed his will.
Mrs. Jackson testified that she went to Detroit to see her children for a three-day trip. She said that before she left, the testator had said that he was going to write a new will and wanted to dictate it. She said that she could not transcribe it for him due to her arthritis and suggested that he ask her daughter, Mattie Penn. He did so while she was in Detroit. He then took the rough draft or notes to an attorney, Mr. Don Wassner, who, after extensive conferences with the testator, drafted a final will. Mr. Wassner testified that the testator was very determined and firm in how he wanted his will to be drafted, that he was alone with Mr. Wassner at the conferences, and that he was not forced, pressured or otherwise unduly influenced by Mrs. Jackson or others in the terms of his will. Mrs. Jackson and Charles Penn accompanied the testator to Mr. Wassner's office and were present at the execution. Although there was testimony that they read the will together and that he asked her for the correct spelling of a name, Mr. Wassner testified that Mrs. Jackson never otherwise discussed the terms or provisions of the will with the testator in his office.
Mrs. Jackson testified that the testator had told her that he intended to rewrite his will in her favor from gratitude for her willingness to care for him during his illness, that the only suggestion that she had made to him about his will was that he leave something to his brothers, and that his response was that she could not tell him what to do with his money.
The widow of the testator's deceased brother, Charlie, Mrs. Ella Mae Davis, testified that, during a visit at the Jacksons' home during the summer of 1978, she heard Mrs. Jackson ask the testator whether he was "going to do what he said he was going to do," whereupon he said yes, collected some unidentified papers, and went out with Charles Penn. Mrs. Davis did not know what papers were involved nor where the two men were going.
The foregoing does not constitute sufficient evidence of undue influence. Indeed, there was no evidence whatsoever that Mrs. Jackson pressured the testator, threatened him with abandonment, or in any way at any time forced or otherwise *Page 244 
unduly influenced him to write his will in her favor.
This Court has recently held no undue influence on a set of facts which far more seriously indicated potential undue influence than do the facts in the present case. In that case,Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1977), we stated the following:
 Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant
confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499 (1948), citing Hyde v. Norris, 250 Ala. 518, 35 So.2d 181 (1948). In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue
activity on the part of the dominant party in procuring the execution of the will. Wilson v. Payton, supra; Alexander v. Alexander, 208 Ala. 291, 94 So. 53 (1922).
 A confidential relationship may spring from "those multiform positions in life wherein one comes to rely upon and trust another in his important affairs." Raney v. Raney, 216 Ala. 30, 34, 112 So. 313, 316
(1927).
 Whether the beneficiary, or one acting for him, was the dominant party in the relationship between the two is usually a question of fact, but in any case there must be some evidence of controlling influence over the testator's purposes by the other. Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942); Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808 (1933).
A "favored beneficiary" has been held to be:
 [o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed. Cook v. Morton, 241 Ala. 188, 1 So.2d 890 (1941).
 These elements of the presumption go far, of course, in proving the principal charge of undue influence which has been defined in Locke v. Sparks, 263 Ala. 137, 140, 81 So.2d 670, 673 (1955):
 Undue influence, must be such as, in some measure, destroys the free agency of the testator, and prevents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property.
 And it must be kept in mind that not all influence is undue; any influence resulting from sympathy and affection only is not disfavored. See Abrams v. Abrams, 225 Ala. 622, 144 So. 828 (1932).
343 So.2d at 499.
In the instant case, even assuming that there was a scintilla of evidence of a confidential relationship between Mrs. Jackson and the testator and that Mrs. Jackson was the dominant party in that relationship, there is no evidence that she unduly influenced the testator in drafting his will. Mrs. Jackson's observation of the will's execution and her answer to testator's request for a minor spelling correction does not constitute undue influence as there is no evidence that her presence tended to destroy the testator's free agency, nor does the fact that she lived in the same house with the testator while the will was being drafted and executed. "While this may have presented an opportunity to exercise influence, there is no showing of any activity on the part of [Mrs. Jackson] nor ofundue influence per se," Arrington v. Working Woman's Home,368 So.2d 851, 854 (Ala. 1979) (emphasis original).
Mrs. Davis's testimony concerning the testator's unidentified papers does not constitute evidence of nor give rise to a reasonable inference of undue influence, nor does the evidence as a totality present more than suspicion and speculation that undue influence may have been present. *Page 245 
The scintilla rule is not satisfied by speculation. Evidence to support undue influence must provide at least a reasonable inference rather than mere suspicion. Arrington v. WorkingWoman's Home, supra, 368 So.2d at 854; Rota v. Combs, 267 Ala. 50, 99 So.2d 692 (1957); Locke v. Sparks, 263 Ala. 137,81 So.2d 670 (1955). Under Rule 50 (e), Alabama Rules of Civil Procedure, a directed verdict is proper where there is not a "scintilla in support of the theory of the complaint," DixieElectric Company v. Maggio, 294 Ala. 411, 318 So.2d 274, 276
(1975), and there is a complete absence of proof on an issue material to the claim. Deal v. Johnson, 362 So.2d 214, 218
(Ala. 1978). In the present case, viewing the evidence and all reasonable inferences in the light most favorable to the nonmovant, Alabama Power Company v. Taylor, 293 Ala. 484,306 So.2d 236 (1975), we hold that there is not a scintilla in support of a claim of undue influence by Mrs. Jackson. See,Reed v. Walters [1981] 396 So.2d 83 (Ala. 1981).
The circuit court had jurisdiction under § 43-1-79 of the Alabama Code of 1975, which permits an interested party to contest the validity of a will by filing a complaint within six months of probate in the circuit court of the county in which the will was probated. The instant complaint was properly and timely filed, the contestants were clearly interested parties, and the Colbert County Circuit Court properly had jurisdiction over this matter.
As we have concluded that the trial court had jurisdiction and that the case must be reversed for the trial court's denial of defendant-proponent's motion for a directed verdict, we have not addressed other points raised on appeal.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.