This is a will contest. O.W. (Osmie) Pope died on September 16, 1982. His wife had died about ten months prior to his death. He had no children. One of Osmie's nieces, Cindy Crosby Windham, filed a petition seeking to have his last will and testament probated. After the will was admitted to probate, one of Osmie's brothers, Luico Pope, filed a petition for removal of the *Page 1076 
estate proceedings to circuit court and filed a contest of the will. The complaint alleged that the testator lacked testamentary capacity to make a will, that the will was not properly executed, and that the will was the product of undue influence. A jury returned a verdict in the contestant's favor and a judgment was entered on the verdict. Cindy Windham appeals.
The will is a one-page document devising a specific parcel of real estate. The land in question is part of a tract which Osmie and his brother-in-law, Randolph Crosby, purchased about 1952, '53, or '54 and divided between themselves. The will devised Osmie's interest in the property to Randolph's daughter, Cindy Windham. There were no other devises in the will and there were no bequests. There were no instructions in the will regarding the residuary of the estate.
The lawyer who drafted the will, Joe Cassady, testified about the circumstances surrounding the drafting and execution of the will. Randolph Crosby accompanied Osmie to Cassady's office on the occasion when they discussed the will. Randolph was present while Osmie and Cassady talked. Osmie gave Cassady a deed and told him that the property described in the deed was the only property he wanted disposed of by the will. Cassady suggested to Osmie that he dispose of all his property by the will instead of just the real estate, and Osmie replied that the real estate was all he wanted included. Cassady testified that Randolph did not offer any advice or suggestions to Osmie as to the contents of the will except to suggest that Osmie follow Cassady's advice and dispose of all his property by the will. Cassady testified that at the time the will was drafted he was unaware of Osmie's relationship to either Randolph Crosby or Cindy Windham. After the will was prepared, Osmie signed the will in the presence of Cassady and Crosby and they signed the will as attesting witnesses.
The substance of the pertinent testimony in support of the contestant's case is as follows. One neighbor testified that Osmie once told him that his lawnmower stayed gone so much that every time he wanted to use it he had to go get it. A relative testified that about three weeks before he died, Osmie told her that he had not made a will and that he was not going to. Another relative testified that Randolph had stated to him that "we shouldn't have put the will back in [the safety deposit box]" and not to mention the will. The witness also testified that he had stopped at Osmie's house one day and asked him to eat dinner with him and his family any time that he wished. He stated that Osmie replied that he "liked to stay at home, said he would fare better at his home, but he appreciated it, and he wished that they would leave him alone and pointed down toward Randolph's." The sister of Osmie's late wife, Ruth, testified that following Ruth's death Cindy and Randolph were at Osmie's house regularly. They helped look after him. Ruth, who had been a schoolteacher, had always taken care of paying the bills and that type of thing. After she died, Cindy and Randolph would help Osmie by writing checks which Osmie signed for his bills. Despite the fact that he allowed Cindy and Randolph to handle his affairs, the sister admitted that Osmie "knew about his money and where his money was I am sure. He was that type, but as far as taking hold and taking care of everyday things, no." She testified that she did not know of any incidents of Cindy or Randolph "bossing" Osmie. She testified that after Osmie died Randolph once stated to her that "We shouldn't have put the will back in [the safety deposit box]."
According to the bank records introduced into evidence, on the day after Osmie's death Cindy Windham, Andy Windham, Joe Cassady, and two bank employees opened Osmie's safety deposit box and removed the will in question. The bank's records do not indicate that anything else was taken from the box.
The contestants challenged the will on numerous grounds. It is apparent from the record, however, that the only issue actually litigated was the question of undue *Page 1077 
influence. The testimony of due execution was uncontroverted. The only testimony regarding the testator's capacity to make a will was to the effect that he "knew about his money and where his money was." The only issue presented in this appeal is whether the evidence supports the verdict.
The contestant who alleges undue influence bears the burden of proof. Kelly v. Donaldson, 456 So.2d 30, 33 (Ala. 1984). The burden of proof is shifted to the proponent if the contestant proffers evidence (1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will. Penn v. Jarrett, 447 So.2d 723, 724 (Ala. 1984); Reed v.Walters, 396 So.2d 83, 86 (Ala. 1981).
We agree with the proponent that the contestant failed to produce even a scintilla of evidence as to each element necessary to shift the burden to the proponent or to otherwise prove undue influence. While there was some evidence to support the proposition that there was a confidential relationship between Cindy and Osmie, or between Randolph and Osmie, the contestant failed to prove (1) that Cindy was a favored beneficiary; (2) that either she or her father was dominant and controlling; or (3) that there was undue activity in procuring the execution of the will.
This Court has defined "favored beneficiary":
 "One who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in a position to do so; and shown to have been busy in getting such will executed."
Cook v. Morton, 241 Ala. 188, 1 So.2d 890, 892 (1941). The "equal claim of others" refers not to the laws of descent and distribution, but to the facts of the particular case. Mindlerv. Crocker, 245 Ala. 578, 18 So.2d 278, 281 (1944); Cook, supra.
In this case there was no evidence indicating that others had a claim to the testator's sympathy or benevolence which was equal to or greater than the devisee's. See Pruitt v. Pruitt,343 So.2d 495 (Ala. 1976). The record is devoid of evidence as to who the natural objects of the testator's bounty might have been. He was a widower without children. There was no evidence tending to show that he was closer to some other person or persons than he was to Cindy. Moreover, the will only disposed of a portion of the estate, and there was no evidence showing the value of the remainder of the estate which will be distributed among the contestant and those of equal consanguinity. It is mere speculation to conclude that Cindy was to receive a disproportionate share of the estate under the will.
Nor did the contestants prove that Cindy or her father was the dominant party in their relationships with Osmie. Although she took care of him and wrote his checks, there was no suggestion that she handled his money in any way except according to his wishes and directives. The undisputed testimony was that Osmie knew where his money was. There was no testimony that Randolph or Cindy ever "bossed" Osmie. The naked statement that Osmie once said that he wished "they would leave him alone" is insufficient to prove that Osmie was dominated by anyone.
Even if we were to assume that Randolph was acting on Cindy's behalf in taking Osmie to a lawyer to have the will drafted, the fact that Randolph accompanied Osmie to the lawyer's office does not in itself establish undue activity in procuring the execution of the will. Sanford v. Coleman, 418 So.2d 856, 859
(Ala. 1982); Johnson v. Howard, 279 Ala. 16, 181 So.2d 85, 90
(1965). The lawyer who drafted the will testified that while they were in his office Randolph's only suggestion to Osmie regarding the contents of the will was his suggestion to dispose of all his property by the will, a suggestion which Osmie did not follow. *Page 1078 
The most that the contestant proved was that Cindy and her father had an opportunity to exert undue influence on Osmie. They helped take care of him and spent a great deal of time in his home. Without more, that is not sufficient to show undue influence which will vitiate the operation of the will.Arrington v. Working Woman's Home, 368 So.2d 851, 854 (Ala. 1979). The scintilla rule is not satisfied by speculation. Pennv. Jarrett, 447 So.2d 723, 725 (Ala. 1984). It is not merely influence which will defeat a will; it is undue influence.Sanford v. Coleman, 418 So.2d 856, 859 (Ala. 1982). There must be some evidence that the favored beneficiary played such a part in the procurement of the will that the testator did not make the will under his own volition or devise his property in a manner consistent with his free will and desires. Rabon v.Rabon, 360 So.2d 971, 972 (Ala. 1978). No such evidence was introduced in this case.
The judgment is reversed for the trial court's failure to grant the proponent's motion for directed verdict.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.