This case involves the validity of a trust agreement. Blanche C. Moss executed an inter vivos trust approximately one month prior to her death. The trust was intended for her own use and benefit during her lifetime, with a gift over to George C. "Jake" Zimmerman and Gilberta F. "Sam" Zimmerman at her death. Her husband and executor, Milo Hauntus Moss, filed a complaint for declaratory judgment and injunctive relief against the trustee, Nolan Crump, contesting the validity of the inter vivos trust on the ground that the agreement and signature were procured as a result of undue influence exerted by the Zimmermans.[1] The jury found in favor of the plaintiff-appellee Mr. Moss. We affirm.
On May 8, 1985, after 40 years of marriage, Mr. and Mrs. Moss were divorced. At that time, Mr. Moss was 89 years old. Approximately one month later Mrs. Moss moved back in with her husband. The divorce judgment was set aside on June 13, 1985.
Mrs. Moss was an invalid during this period. She was confined to her bed or wheelchair, and was totally dependent on others for her care and feeding. Mr. Moss hired a woman to assist in the care of his wife. When the first woman proved unsatisfactory, Mr. Moss hired another woman. Nonetheless, Mrs. Moss became frustrated with the care she received and she asked her close friends, Jake and Sam Zimmerman, to assist her. The Zimmermans immediately came to the Mosses' home and took Mrs. Moss to their home, but they did *Page 611 
not tell Mr. Moss where they were taking his wife.
While Mrs. Moss stayed with the Zimmermans, they took care of her daily needs. Mr. Moss wanted to see his wife, but the Zimmermans refused to allow him to see or talk to her. Since he could not drive, several times he hired someone to take him to the Zimmermans' home, but Mrs. Zimmerman would not allow him to see Mrs. Moss. On one occasion, Mr. Moss came to the house to discuss an insurance matter and he saw Mrs. Moss sitting in the living room. When he knocked on the door, Mrs. Zimmerman came and slammed the door in his face. When Mr. Moss tried to telephone, he discovered that the Zimmermans had had their phone number unlisted.
Several weeks after the divorce was set aside, and while Mrs. Moss was living with the Zimmermans, Mrs. Moss went back to Marcus D. Owsley, the attorney who had handled her divorce, to discuss the disposition of her property at her death. Mrs. Zimmerman drove Mrs. Moss to that first meeting, and there was testimony that she stayed in the room while Mrs. Moss talked to her attorney. Mrs. Moss met with her attorney several more times. Sometimes, Mrs. Zimmerman drove Mrs. Moss to her attorney's office, and at other times Mr. Owsley went to the Zimmermans' home to talk with Mrs. Moss. When Mr. Owsley was at the Zimmermans' home, he took precautions to insure that no one could hear his conversation with Mrs. Moss, by speaking quietly and pushing something against the door to prevent unexpected interruptions.
According to Mr. Owsley, Mrs. Moss told him during these conversations that because Mr. Moss allegedly physically and mentally abused her, she did not want her husband to receive any of her property at her death. Furthermore, even though she had some relatives in Ohio, she did not want to leave them anything either. Instead, Mrs. Moss wanted to be assured that she would be taken care of during her lifetime, and after her death she wanted the remainder of her property to be given to the Zimmermans.
Mr. Owsley explained to Mrs. Moss that because most people leave their property and valuables to their spouses or relatives, litigation was likely. Mr. Owsley suggested that Mrs. Moss explain her reasons for excluding her husband and relatives from the trust in the text of the trust agreement. Section 7 of the trust agreement states Mrs. Moss's intentions.
At trial, Mr. Owsley testified regarding Mrs. Moss: "[F]or her age — she always seemed very sharp. She discussed her situation with me very intelligently. She weighed several alternatives or seemed to to me. She thought over several alternatives that I presented to her as to how she might handle her situation at that point in time." Mr. Owsley asked her who she wanted to act as the trustee, and Mrs. Moss named Nolan Crump and a bank employee from Pell City. Mr. Crump agreed to act as trustee.
On August 5, 1985, Mr. Owsley and his secretary went to the Zimmermans' home to have the trust agreement executed. Mrs. Moss was in her wheelchair in the living room, along with Billy R. Rush. Mrs. Moss signed the agreement; Messrs. Rush and Owsley witnessed her signature, and Mr. Owsley's secretary notarized the agreement. After the execution, Mrs. Zimmerman delivered the trust agreement to Mr. Crump, the trustee, along with cancelled checks, withdrawal certificates, checkbooks, and other bank documents belonging to Mrs. Moss.
Ten days after the execution of the trust agreement, Mrs. Moss was admitted to the hospital. After several days she was transferred to a nursing home, where she died on September 2, 1985.
Mr. Moss was never told by the Zimmermans that his wife had been admitted to the hospital or placed in a nursing home. However, a relative read in a local paper that Mrs. Moss was in an Anniston nursing home and told Mr. Moss. He hired a driver and went to visit his wife at the nursing home. That was the last time Mr. Moss saw his wife. After Mrs. Moss's death, *Page 612 
Mr. Crump went to Mr. Moss's home to inform him that his wife had died and that the funeral would be the next morning at 10:00 a.m. Mr. Moss hired a driver to take him to his wife's funeral, but when he arrived at the funeral home, he was told that his wife's funeral had been held the previous day.
Mr. Moss sued Nolan Crump, as trustee, seeking a declaratory judgment and injunctive relief, claiming that the Zimmermans exerted undue influence on Mrs. Moss and that but for their influence, Mrs. Moss would not have executed the trust agreement naming them as beneficiaries.
Prior to trial, the parties and the judge agreed that the only issue that would go to the jury was the question of undue influence and that, if necessary, any other questions would be determined by the trial judge in a separate hearing. At the close of the plaintiffs case, Mr. Crump moved for a directed verdict on the ground that the plaintiff had failed to establish a prima facie case of undue influence. The motion was denied. The jury found in favor of Mr. Moss, and Mr. Crump moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial. This motion was also denied. This appeal followed.
The sole issue on appeal is whether there was sufficient evidence to support a jury finding of undue influence.
Proving undue influence in the procurement and execution of a trust agreement requires essentially the same evidence as is required to invalidate a will. 89 C.J.S. Trusts, § 76 et. seq. (1975). To raise a presumption of undue influence sufficient to bring the question before the jury requires only a scintilla of evidence of each element of undue influence. Reed v. Shipp,293 Ala. 632, 308 So.2d 705 (1975); A.T.F. Trucking Co. v. FisherBrothers Sales, Inc., 498 So.2d 846 (Ala.Civ.App. 1986). Furthermore, the evidence need not be direct, but can be circumstantial. Reed, 293 Ala. at 637, 308 So.2d at 709; Bardinv. Jones, 371 So.2d 23 (Ala. 1979); Wall v. Hodges,465 So.2d 359 (Ala. 1984). However, the evidence must provide at least a reasonable inference of undue activity. Penn v. Jarrett,447 So.2d 723, 725 (Ala. 1984); Jackson v. Davis, 398 So.2d 242,245 (Ala. 1981). Mere suspicion is not enough. Id.
To meet his burden, the plaintiff must prove: 1) that there was a confidential relationship between the settlor and the beneficiaries; 2) that the beneficiaries had a dominant and controlling influence on the settlor; and 3) that there was undue activity by the dominant parties in procuring the execution of the trust. Smith v. Smith, 482 So.2d 1161 (Ala. 1985); Kelly v. Donaldson, 456 So.2d 30 (Ala. 1984); Penn, supra; Jackson, supra.
The first two elements are not in dispute on appeal. However, the appellant claims that there was no evidence to support a jury finding of undue influence on the part of the Zimmermans.
Evidence of the following facts was presented by Mr. Moss to meet his burden of proving the third element of undue influence: the fact that Mrs. Moss was seriously ill and was physically taken from her home by the Zimmermans; the fact that Mr. Moss was not told where his wife was being taken; the fact that after Mrs. Moss was taken to the Zimmermans' home, Mr. Moss was not allowed to see or speak to his wife, even though he had hired a driver to take him to see her; the fact that the Zimmermans got an unlisted number after Mrs. Moss came to live with them; the fact that Mrs. Zimmerman took Mrs. Moss to her attorney's office only a short time after Mrs. Moss arrived at her house, and on at least one occasion stayed in the office while the attorney discussed the trust agreement with Mrs. Moss; the fact that Mrs. Zimmerman delivered the trust agreement, bank books, and other valuable documents to Mr. Crump, the trustee; the fact that the Zimmermans never informed Mr. Moss that his wife was admitted to the hospital or that she went to a nursing home to live; the fact that Mr. Crump waited several days before informing Mr. Moss that his wife had died, and that he misinformed Mr. Moss about the date of the funeral, causing him to miss it. *Page 613 
Some of these facts might not, standing alone, create a presumption of undue activity. However, each fact should be considered in the context of the entire situation and in light of the other two criteria for determining undue influence, namely, a confidential relationship and an opportunity to dominate the settlor's actions. The fact that Mrs. Moss was completely dependent on someone else for every aspect of her care; the fact that the Zimmermans were giving that care and preventing her husband from speaking to her; and, the timing of the trust agreement in relation to her death, should all be considered along with the evidence of undue activity. Considering these facts in context with the other facts, we conclude that the trial judge was correct in determining that there was evidence of undue activity. The burden of proof was thus met and it was appropriate to allow the question to go to the jury.
Because the jury personally evaluates the evidence, the witnesses, and the credibility of each, once the jury has reached a verdict based on the evidence, we give that verdict great credence and there is a very strong presumption in favor of upholding the jury verdict. Mahoney v. Forsman,437 So.2d 1030, 1033 (Ala. 1983). As this Court said in Smith v. Moore,278 Ala. 173, 176 So.2d 868 (1965):
 "It is unimportant that we might have reached a different conclusion on the evidence as shown by the record. We did not see the witnesses nor have a chance to observe the parties first hand. The important consideration is that there is evidence in the record from which the jury could have reached the verdict it rendered. It is conceded by all parties that it is next to impossible to produce direct evidence of the exercise of undue influence over another person. Frequently the best evidence which can be offered for either proponent or contestant is circumstantial, tending only to support inferences which can be drawn therefrom. The Court quite properly submitted these issues to the jury". (Emphasis added.)
278 Ala. at 177, 176 So.2d at 871.
For the foregoing reasons, we conclude that there was sufficient circumstantial and direct evidence, if believed, to support a jury finding of undue influence, and we affirm.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] The Zimmermans are not parties in this suit.