Lillian T. Armstrong, Mary T. Browning, Mildred T. Marsh, Lucille T. Magaha, and Theron Frank Taylor (all hereinafter referred to as the "Taylors") filed a contest of the August 1, 1985, will of Allen M. McGee. The Taylors contend that the disposition of Allen McGee's property in that will resulted from undue influence exercised upon Allen McGee by Jason R. McGee, Jr.
Allen was married to Clara Taylor McGee. They had no children, and all the disputed assets are the product of their joint earnings and investments. The Taylors are Clara's sisters and nephew. Jason McGee and Claudia McGee Scott (hereinafter called the "McGees"), who are named as defendants in the Taylors' action, are Allen's brother and sister. Clara died before Allen, leaving her marital assets to Allen in trust during Allen's life and upon his death to the Taylors and the McGees to be divided equally among all of them. Allen's August 1, 1985, will leaves all his estate to the McGees.
The trial court entered a summary judgment for the McGees. The standard used to determine the propriety of the grant of a motion for summary judgment is found in Rule 56(c), A.R.Civ.P.:
 "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
The burden placed on a party by this rule has often been stated:
 "The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110
(Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980)."
Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985).
In determining whether there was substantial evidence to defeat a summary judgment motion, this Court reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Sanders v. Kirkland Co.,510 So.2d 138 (Ala. 1987). *Page 1312 
To establish undue influence, the will contestant must prove (1) the existence of a confidential relationship between a favored beneficiary and the testator; (2) dominant influence of the beneficiary; and (3) active interference or undue activity by the beneficiary in procuring the execution of the will. Kelly v.Donaldson, 456 So.2d 30 (Ala. 1984); Price v. Norris, 428 So.2d 609
(Ala. 1983).
We first discuss the McGees' attempt to make a prima facie showing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law, and we hold that they did make such a prima facie showing. We then discuss the Taylors' attempt to produce substantial evidence of their claims and the McGees' response.
The first element that the Taylors must prove to establish undue influence is the existence of a confidential relationship between the testator, Allen, and the allegedly favored beneficiary, Jason.Kelly, at 33; Price, at 610. The McGees acknowledge that Jason had a confidential relationship with his brother, but they contend that Jason is not a "favored beneficiary." In Windham v. Pope,474 So.2d 1075, 1077 (Ala. 1985), this Court defined "favored beneficiary":
 "`One who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural
 `inference that advantage has been taken by one in a position to do so; and shown to have been busy in getting such will executed.' Cook v. Morton, 241 Ala. 188, 1 So.2d 890, 892 (1941).
 The `equal claim of others' refers not to the laws of descent and distribution, but to the facts of the particular case. Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278, 281 (1944); Cook, supra."
The McGees argue that Jason has not been favored over others with equal claims. The McGees contend that Jason took care of Allen after Clara's death and that the Taylors ignored Allen and never came to see him, so he naturally wanted to give everything to the McGees. Accordingly, the McGees argue, there is no "unnatural discrimination" and Jason is not a favored beneficiary.
The next element that the Taylors must prove to establish undue influence is Jason's domination or control over Allen. Kelly, at 33; Price, at 610. In 1973, Allen suffered a stroke that paralyzed most of his body, and after that he was mostly bedridden. Rosa Patton, one of Allen's nurses who stayed at his home, described Allen, despite his physical condition, as a "stubborn" man, and she said "if he did not want to do something, no one could make him do it." Will contestant Mary Browning testified that Allen, as of July 23, 1985, "very definitely" had "a mind of his own." Will contestant Mildred Marsh testified that at the time of Clara's death, July 21, 1985, Allen "had a mind of his own." Will contestant Frank Taylor testified that in August 1985 Allen "had a mind of his own." Clark Campbell, who along with Jim Davis drafted Allen's August 1, 1985, will, offered evidence suggesting that Jason did not dominate or control Allen.
The third element that the Taylors must prove to establish undue influence is that Jason was unduly active or actively interfered in procuring the will. Kelly, at 33; Price, at 610. Windham, at 1077, described the type of evidence necessary to prove undue activity or active interference:
 "There must be some evidence that the favored beneficiary played such a part in the procurement of the will that the testator did not make the will under his own volition or devise his property in a manner consistent with his own free will or desires."
Campbell testified that Jason was not present when Allen discussed his testamentary desires with Campbell or Davis; that Jason never instructed him or Davis concerning Allen's August 1, 1985, will; and that Jason was not present when that will was executed.
Considering the evidence the McGees presented in support of their summary judgment motion, we hold that they *Page 1313 
made a prima facie showing that there was no genuine issue of material fact and that they were entitled to a summary judgment as a matter of law. Schoen v. Gulledge, at 1096-97. Accordingly, the burden then shifted to the Taylors to present substantial evidence of their claim, so as to prove that there were genuine issues of material fact. Id.
To begin, the Taylors cite Crump v. Moss, 517 So.2d 609, 612 (Ala. 1987), holding that undue influence can be proved by circumstantial evidence as well as by direct evidence. We stated in that opinion:
 "`It is conceded by all parties that it is next to impossible to produce direct evidence of the exercise of undue influence over another person. Frequently the best evidence which can be offered for either proponent or contestant is circumstantial, tending only to support inferences which can be drawn therefrom.'"
517 So.2d at 613, quoting Smith v. Moore, 278 Ala. 173, 177,176 So.2d 868, 871 (1965). Keeping in mind that statement, as well as the requirement that we review the evidence in the light most favorable to the Taylors, we now review the Taylors' arguments and evidence.
The Taylors contend that Jason must be found to be a favored beneficiary, given the circumstances of this particular case. Windham, at 1077. On May 23, 1985, Allen and Clara executed similar wills; those wills were drafted by David R. Byrne, Jr. Both wills named Robert E. Taylor, Clara's nephew, as executor, and each will devised the property to the surviving spouse in trust and after the death of the surviving spouse to the Taylors and the McGees, to be divided equally among all of them. Clara died of cancer two months later, on July 21, 1985. On August 1, 1985, Allen executed the contested will that excluded the Taylors and named the McGees as the executors and as theonly beneficiaries. The Taylors argue that in Nottage v. Jones,388 So.2d 923, 927 (Ala. 1980), the Court held that evidence of a major conflict between the challenged will and a testator's prior will or plan to distribute his property can indicate an "unnatural disposition" of the property:
 "The fact that the will typed by the proponent left the bulk of his estate to her, while a will written two years earlier left his estate to his children, could be considered by the jury as evidence of an unnatural disposition of his property as a result of undue influence on the part of the proponent."
The Taylors argue that Windham, at 1077, indicates that whether a beneficiary is "favored" by a will can also be proved by evidence that the disposition was procured by an individual shown to "have been busy in getting such will executed."
Viewing the evidence in the best light for the Taylors, it indicates that two hours after Clara was buried, Jason went to David Byrne's office and asked to see Clara's will. Byrne was not there; Jason talked to another lawyer in Byrne's firm about the will, but was unsatisfied with that lawyer's explanation of the will. Jason made a copy of the will and took that copy to Campbell and Davis's office. They explained the will's provisions to him and advised him that if he was to conduct Allen's financial transactions he would need a power of attorney. Campbell's notes regarding the power of attorney consist of one-half page of handwriting; the other half of that page contains the notations "will — Allen McGee," and "leave everything to brother Jason R. McGee, Jr., and sister Claudia McGee Scott, co-executors." Around July 26, 1985, Allen executed a power of attorney in favor of Jason.
Jason had Allen temporarily moved into Jason's house on July 28, 1985. Thereafter, Jason contacted Campbell and Davis about writing a new will for Allen, and they came to the house to discuss with Allen what he would want in a new will. Other than what we have already discussed, the evidence about the extent of Jason's contact with the attorneys and with Allen prior to the execution of the new will is too extensive to be summarized for the purposes of this opinion.
On August 1, 1985, Allen executed the will that is the subject of this dispute. *Page 1314 
Jason arranged for two of his neighbors to be witnesses. After the will was signed, Campbell made copies and gave Jason the original. Jason kept that original will in Jason's safe deposit box, to which only he had access.
Finally, regarding whether Jason is a favored beneficiary, the Taylors contend that Jason did not provide enough care for Allen to support a holding that as a matter of law Jason is not a favored beneficiary because he was the natural object of Allen's bounty as a result of having helped care for Allen. The evidence indicates that on July 28, 1985, one week after Clara died, Jason moved Allen, without objection by Allen, into Jason's home. Two months later, Jason returned Allen to Allen's home, where he was cared for by a nurse, who stayed with him 24 hours a day. Allen paid the nurse to stay with him, and she stayed in his house until she could no longer take care of him. Allen was occasionally hospitalized and he finally moved to a nursing home, for which he paid the bill, and he continued to reside at the nursing home until he died.
The McGees concede that a confidential relationship existed between Jason and Allen. The evidence indicates that between May 23, 1985, and August 1, 1985, Clara died and Jason temporarily moved Allen in with him. On August 1, 1985, Allen executed a will that made a major change in his prior testamentary disposition, and that change favored Jason. The evidence indicates that Jason was indeed "busy in getting [Allen's] will executed." Windham, at 1077. The evidence does not indicate that Jason helped his brother so much that the change in the testamentary disposition is proper as a matter of law.[1]
Accordingly, we hold that the Taylors presented substantial evidence of the existence of a confidential relationship between a favored beneficiary, Jason, and the testator, Allen, Kelly, at 33; Price, at 610, and that as to this issue there exist genuine issues of material fact, suitable for jury determination.
The Taylors contend that they presented substantial evidence that Jason's influence on Allen was dominant. Kelly, at 33; Price, at 610. Jason testified that Allen was a "physical invalid" after his 1973 stroke and that physically Allen was "totally and completely helpless" at the time of Clara's death. It is undisputed that Allen was bedridden, unable to live alone, and needed full-time care. He could not bathe himself and had difficulty controlling his bowel and bladder functions. Allen had little or no use of one of his arms and one of his legs as a result of the stroke and had to sign his name with an "X." Claudia testified that Allen did not have glasses and therefore could not read. After Clara's death, Jason personally handled all financial transactions relating to Allen's assets and Allen relied on him to do so. Campbell agreed in his deposition that Jason was "very active" in helping his brother manage his affairs.
The Taylors cite Rabon v. Rabon, 360 So.2d 971 (Ala. 1978), for the proposition that evidence similar to that set out above can be used to indicate that an individual is dominant and controlling for the purposes of establishing undue influence. In Rabon, the court held that the following evidence would "tend to prove the favored beneficiary [was] dominant and controlling": "[T]he testator was 86 years old and in a rapidly deteriorating state of health. He was described as being feeble and childlike, could not drive, read, or even feed himself. In short, he was almost completely dependent upon his wife." 360 So.2d at 972.
The Taylors further contend that Jason exercised domination and control over Allen by approaching Allen about his will within a week after Clara had died, during an extremely emotional time for Allen, who had just lost his wife of 39 years and who had just moved out of the house that he had lived in for 30 years. The Taylors contradict the McGees' evidence that Allen "had a mind of his own" with Jason's deposition testimony that he refused to allow *Page 1315 
Allen, immediately after Clara's death, to remain at Allen's home with G.L., who had been Allen's nurse for a year and a half:
 "A. Because I would not have put it past G.L. one bit to have loaded him in his Cadillac automobile and hauled him off to Prattville or Wetumpka and had a judge to marry them.
"Q. I'm sorry? Had him what? Judge to what?
 "A. To marry them. To marry them. G.L. wanted to get her hands on this money. And when she found out that she wasn't going to, she was extremely upset about it. I wasn't even considering leaving him over there alone with G.L. I've told you that Clara expressed to me frequently her anxiety about [G.L.'s] relationship with Al."
Although some of the Taylors themselves testified that Allen "had a mind of his own," they challenge the McGees' assertions that Allen "had a mind of his own" with evidence that Jason was further concerned about undue influence on Allen, probably by the Taylors: They presented evidence that Jason had instructed Allen's housekeepers and nurses not to allow him to sign anything unless Jason was present.
Considering the record, we hold that the Taylors presented substantial evidence that Jason's influence was dominant, Kelly, at 33; Price, at 610; thus, as to this issue, there exist genuine issues of material fact, suitable for jury determination.
There is much conflicting evidence in the record concerning the third element that the Taylors must prove, that Jason actively interfered or was unduly active in procuring the will. For brevity's sake, we summarize the evidence as succinctly as possible. The Taylors again cite Jason's knowledge of and participation in the procurement of Allen's will and argue that evidence shows that he interfered and was unduly active in the procurement of the August 1, 1985, will. The Taylors argue that the timing of the execution of that will indicates active interference by Jason, because Jason learned shortly after Clara's death that Clara's will and Allen's will were similar and then helped Allen change his will less than a week later. The Taylors argue that by taking Allen out of his home, away from the nurse that Jason feared might unduly influence Allen, Jason created his own opportunity to influence Allen unduly.
The Taylors also argue that the evidence indicates that Allen acted in a manner similar to the improper manner in which the proponent of the trust in Crump v. Moss acted. In Crump, the Court held that the following facts sufficiently supported the jury's finding of undue activity or interference in the procurement of a trust:
 "[T]he fact that Mrs. Moss was seriously ill and was physically taken from her home by the Zimmermans; the fact that Mr. Moss was not told where his wife was being taken; the fact that after Mrs. Moss was taken to the Zimmermans' home, Mr. Moss was not allowed to see or speak to his wife, even though he had hired a driver to take him to see her; the fact that Mrs. Zimmerman took Mrs. Moss to her attorney's office only a short time after Mrs. Moss arrived at her house, and on at least one occasion stayed in the office while the attorney discussed the trust agreement with Mrs. Moss; the fact that Mrs. Zimmerman delivered the trust agreement, bank books, and other valuable documents to Mr. Crump, the trustee; the fact that the Zimmermans never informed Mr. Moss that his wife was admitted to the hospital or that she went to a nursing home to live; the fact that Mr. Crump waited several days before informing Mr. Moss that his wife had died, and that he misinformed Mr. Moss about the date of the funeral, causing him to miss it."
517 So.2d at 612.
The record indicates that when Jason decided to move Allen to his house, he told his sister and G.L., but no one else. Asked if he told any of Clara's relatives, Jason answered "No, of course not," that it was not important that they know where Allen was, and that it was not anyone else's business where Allen was. When Jason *Page 1316 
moved Allen back to Allen's home, Jason had the locks changed and had the telephone number unlisted. Additionally, Jason testified that he felt that the Taylors did not have a right to know the status of Allen's physical condition. The record indicates that Jason instructed the personnel at the Veterans Administration Hospital, where Allen was treated on occasions, not to give any information concerning Allen's condition to anyone except Jason, Jason's wife, Millie, and Claudia. The record also indicates that Millie instructed the personnel at the nursing home where Allen resided not to give any information about Allen to anyone except her, Jason, and Claudia.
The Taylors also point to a transaction involving Allen's house as evidence of Jason's allegedly improper activities. Allen owned his house in fee simple after Clara died. In September 1985, while Allen was still living at Jason's house, Allen executed a warranty deed to Jason that conveyed title to Allen's house to Jason and reserved only a life estate for Allen. Jason paid Allen $100 for the house, which he valued at $50,000 in his deposition. The Taylors argue that "this deed undoubtedly took from Allen for a mere pittance a valuable asset that could have provided needed security for costly long-term care." Additionally, the Taylors point out that in an October 21, 1985, answer filed on behalf of Allen McGee to a motion by the Taylors for an accounting and the appointment of a guardian ad litem (that motion involved separate litigation from the present case), the answer claimed that Allen McGee held fee simple title to the house, although one of Allen's lawyers of record in that separate litigation was a witness to the very deed that one month earlier had transferred title to Jason and reserved only a life estate in Allen.
The Taylors also presented evidence that Jason had an animosity toward them and evidence suggesting an improper dual representation of Allen and Jason by Campbell and Davis.
We hold that the Taylors presented substantial evidence that Jason actively interfered or was unduly active in the procurement of Allen's will. Kelly, at 33; Price, at 610. Thus, the Taylors presented substantial evidence of all the elements necessary to prove their claim. We note that the McGees offered evidence contradictory to most of the Taylors' evidence. Clearly, there exist genuine issues of material fact suitable for jury determination.
The trial court erred by entering the summary judgment. That judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] We do not necessarily mean to imply that evidence of "help" can by itself sufficiently support such a holding as a matter of law.