June M. Henderson sued Hiliary H. Henderson III, David Poole Henderson (sometimes hereinafter called "David"), and Thomas Brooks Henderson, alleging against them several claims, including interference with contractual relations, and alleging undue influence in regard to the execution of a will and a trust instrument. The Jefferson Circuit Court entered a summary judgment for the defendants on the intentional-interference claim and the undue-influence claim. The plaintiff appealed; the Court of Civil Appeals affirmed, without opinion. Henderson v. Henderson, (No. 2970519, June 19, 1998) ___ So.2d ___ (Ala.Civ.App. 1998) (table). We have granted the plaintiff's petition for certiorari review.[1]
Our standard for reviewing a summary judgment is to "determine whether there is a genuine issue as to any material fact and, if not, whether the movant was entitled to a judgment as a matter of law." System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 420
(Ala. 1996). In making this determination, "[t]his Court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." System Dynamics, 683 So.2d at 420.
The evidence, viewed in the light most favorable to the plaintiff, suggests these facts: Ms. June Henderson and Dr. Hiliary Henderson were married for over 20 years, until Dr. Henderson's death in 1996. The defendants are Dr. Henderson's sons by a former marriage. Dr. Henderson's health declined during the two years before his death. During this period, Dr. Henderson asked his son David to make certain that Dr. Henderson's will, executed shortly after he had married Ms. Henderson, complied with current laws. *Page 297 
David, acting for the sons, hired an attorney and instructed the attorney to draft a new will and a trust agreement, even though the first will complied with current law. The attorney had no direct contact with Dr. Henderson in the drafting of the will or in the execution of the will or the trust agreement. The trust agreement and the new will were executed by Dr. Henderson on July 14 and 15, 1995, respectively.[2] Dr. Henderson's physician testified that in her opinion Dr. Henderson was mentally incompetent from the time she first examined him in June 1995 until his death. The trust agreement gave Ms. Henderson the income from two of the eight securities owned by Dr. Henderson at the time of his death. Six of the securities were bequeathed by Dr. Henderson under the new will to the defendants as part of Dr. Henderson's residuary estate. Ms. Henderson was not aware that a new will, or the trust, had been prepared, until after Dr. Henderson's death. Ms. Henderson claimed that the new will and the trust agreement conflicted with a prenuptial agreement between her and Dr. Henderson. The prenuptial agreement guaranteed Ms. Henderson the income from all of the stocks in Dr. Henderson's security account at the time of his death.[3]
Because Ms. Henderson was excluded from Dr. Henderson's will, and because the trust agreement gave her the income from only two of the eight securities owned by Dr. Henderson at the time of his death and bequeathed the other six securities to the sons as part of Dr. Henderson's residuary estate, Ms. Henderson sued the sons.
If the defendants made a prima facie showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law, the circuit court could grant their motion for a summary judgment, unless the plaintiff rebutted that showing by substantial evidence creating a genuine issue of material fact. Rule 56(c), Ala.R.Civ.P.; see, e.g., Williams v. Hill, 658 So.2d 381, 383 (Ala. 1995). Ms. Henderson, the plaintiff, contends that she produced "substantial evidence" to defeat the defendants' summary judgment motion, even assuming that motion had been properly supported. "Substantial evidence" means "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989); see Allen v. Sconyers, 669 So.2d 113, 115 (Ala. 1995). Because we conclude that Ms. Henderson presented substantial evidence creating a genuine issue of material fact regarding her claims alleging undue influence and intentional interference with contractual relations, we reverse and remand.
To prevail on a claim of intentional interference with contractual relations, a plaintiff must present substantial evidence indicating: "(1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the defendant's interference." Pegram v. Hebding, 667 So.2d 696, 701 (Ala. 1995). The first two elements, existence of a contract (in this case, the prenuptial agreement) and the defendants' *Page 298 
knowledge of that contract, are not contested.
With regard to the third element, the plaintiff points out that in Pegram this Court held that the evidence would support a finding of intentional interference when a defendant (who was the chief executive officer of a corporation), among other things, inexplicably transferred the plaintiff (an employee of the corporation) into a position of less responsibility, while at the same time having a strong motive for wanting the plaintiff transferred or even discharged. 667 So.2d at 697-700. Here, there does seem to have been a strong financial motive on the part of the defendants to have six of Dr. Henderson's securities, those bequeathed to them under the new will, freed from Ms. Henderson's right to receive the income therefrom during her lifetime or until her remarriage, a right she had under the prenuptial agreement. Also, the (arguably inexplicable) creation of a new will with a corresponding trust agreement when the old will was in harmony with the current laws (which is supposedly what Dr. Henderson was concerned with), considered in combination with this motive, raises questions.
Additionally, Ms. Henderson alleges (1) that there was evidence that Dr. Henderson was mentally incompetent when he signed the trust agreement and the new will; (2) that Ms. Henderson was not made aware of the drafting or the execution of the new will or trust agreement until after the death of Dr. Henderson; (3) that the defendants hired the attorney who drafted the trust agreement and the new will, and that the attorney considered the defendants, not Dr. Henderson, to be his clients; (4) that the attorney had no sort of direct contact with Dr. Henderson; and (5) that the defendants paid for the lawyer's services in regard to the new will and the trust agreement.
The defendants, of course, deny these allegations. They state that Dr. Henderson made all of the relevant decisions and that Ms. Henderson has no direct proof that they interfered in any way with their father's decisions or that they intentionally held anything back from her. They call any discussion of Dr. Henderson's mental state irrelevant and a "smokescreen," because this is not a will contest. We do not agree that Dr. Henderson's mental state was irrelevant.
The ability of one party to dominate or control someone else is a major component of the theory of "undue influence." Ms. Henderson cannot raise "undue influence" here to challenge the validity of the will because, as the defendants point out, the trial court ruled that she did not have standing to contest the will and she did not appeal that ruling. However, her arguments concerning undue influence are relevant to her explanation of how she says the defendants "intentionally interfered" with her rights under the prenuptial agreement, rights that were protected by Dr. Henderson's prior will.
We have two lines of cases dealing with when a presumption of undue influence arises. In situations concerning transfers in legal documents (such as wills and trust agreements) where the beneficiaries will not acquire any benefit until the grantor or settlor dies, a presumption of undue influence will arise when three conditions are met: (1) a confidential relationship exists between a favored beneficiary and the testator/settlor; (2) the beneficiary exercises a dominant and controlling influence over the testator/settlor; and (3) there is undue activity in procuring the execution of the legal document that creates the benefit. See Ex parte Baker, 709 So.2d 7, at 9 (Ala. 1997); Crump v. Moss, 517 So.2d 609, 612 (Ala. 1987). However, if the transfer is one by which the beneficiary will receive the benefit immediately (such as a deed or a trust that takes effect immediately upon the execution of the document), then all that need be shown to raise the presumption of undue influence are the first two elements listed above: a *Page 299 
confidential relationship and a dominant influence. See Wilson v. Wehunt, 631 So.2d 991, 993 (Ala. 1994); Nelson v. Buckley, 567 So.2d 855,856 (Ala. 1990); Chandler v. Chandler, 514 So.2d 1307, 1308 (Ala. 1987); Bankcroft v. Otis, 91 Ala. 279, 290, 8 So. 286, 289 (1890). Here, the defendants would not receive any benefits from either of the two documents until Dr. Henderson's death. Therefore, Ms. Henderson must present substantial evidence of all three conditions (confidential relationship, dominant influence, and undue activity) in order to create a fact question as to the third element of intentional interference with the prenuptial agreement.
The fact that Dr. Henderson and the defendants were in a confidential relationship is not contested. See Baker, supra, 709 So.2d at 9; Dowe v. Farley, 206 Ala. 421, 422, 90 So. 291, 292
(1921) (stating that "the relation of parent and child is per se confidential").
A parent is presumed to have a dominant influence over a child, Nelson v. Buckley, 567 So.2d 855, 856 (Ala. 1990), and "[a] party alleging the exercise of undue influence by a child over a parent must `reasonably satisfy the court that time and circumstances have reversed the order of nature, so that the dominion of the parent has not merely ceased, but has been displaced by subservience to the child.'" Id., 567 So.2d at 856 (citations and emphasis omitted). The issue of Dr. Henderson's mental competence is extremely relevant. His physician testified that he was mentally incompetent when he signed the new will and trust agreement; while this evidence is not by itself conclusive, it nonetheless constitutes substantial evidence regarding the question of dominance or control. Ward v. Little, 669 So.2d 836
(Ala. 1995); Armstrong v. McGee, 579 So.2d 1310 (Ala. 1991).
As to the third condition, the defendants maintain that because Ms. Henderson has no direct proof of any "undue activity" by them she cannot meet her burden. However, this Court has noted: "[I]t is next to impossible to produce direct evidence of the exercise of undue influence over another person. Frequently the best evidence which can be offered for either [the] proponent [of a will] or [the] contestant is circumstantial, tending only to support inferences which can be drawn therefrom." Smith v. Moore, 278 Ala. 173, 177, 176 So.2d 868, 871 (1965); see also Crump v. Moss, 517 So.2d at 612 (noting that the evidence required "to raise a presumption of undue influence" can be either direct or circumstantial). Also, the facts shown by the evidence are not considered in a vacuum; rather, "each fact should be considered in the context of the entire situation and in light of the other two criteria for determining undue influence." Crump, 517 So.2d at 613.
We think that Ms. Henderson presented substantial evidence of "undue activity." A new will was made although the old will was legally adequate. Evidence indicates that the provisions in the new will and the trust agreement directly benefited the defendants, to the detriment of Ms. Henderson (by attempting to define the "security account" under the prenuptial agreement as containing only two of Dr. Henderson's eight securities). In the prenuptial agreement, Ms. Henderson was to have the income from all of Dr. Henderson's "securities." The only written notes evidencing the motivation behind the changes to Dr. Henderson's disposition of his estate are his son David's handwritten notes. These notes were introduced as evidence; some of them contain questions concerning the contents of the "security account":
 "3. My father's assets have grown above $250,000. Can we limit his `Security Account' to only $250,000?
"Can he leave more than $250,000?
"Can he leave less than $250,000?
 "4. Other than this `security account' what else is his wife entitled to?
". . . .
 "6. My father has other assets: C.D.'s, property, municipal bonds, etc., — How can we arrange these assets as to not *Page 300 
have any questions on this being part of the so called `security account'?
 "7. Do we need another `will' to clearly define my father's wishes and to clearly define what and how much the `security account' is?"
(Emphasis added.) The defendants' attorney prepared the new will and the trust agreement. Dr. Henderson had no direct contact with the attorney (instead, David served as the "go-between"). Ms. Henderson was not made aware of the new will or the trust agreement until after Dr. Henderson had died. One could infer that the changes made to the disposition of the estate were not rationally related to any change in the circumstances of the relationship between Dr. Henderson and his wife or his relationship with his sons.
Viewing the evidence in the light most favorable to the plaintiff, we think that "fair-minded persons in the exercise of impartial judgment [could] reasonably infer" (see West, supra) that the defendants intentionally attempted to undermine the prenuptial agreement by unduly influencing Dr. Henderson to reduce the amount of securities income Ms. Henderson would receive. See Cleveland v. Central Bank of the South,574 So.2d 741, 744 (Ala. 1990) (stating that although the proponent of a will had produced "strong evidence" against a contestant's claim of undue influence, the contestant had presented sufficient evidence to create a factual issue and thus defeat the proponent's summary-judgment motion).
The Court of Civil Appeals erred in affirming the summary judgment. That court's judgment is reversed, and the cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Kennedy, Cook, See, Lyons, and Brown, JJ., concur.
[1] The circuit court made the summary judgment on these two claims final pursuant to Rule 54(b), Ala.R.Civ.P. Another claim is pending in the circuit court. This appeal was originally taken to this Court, but we transferred it to the Court of Civil Appeals pursuant to Ala. Code 1975, § 12-2-7(6).
[2] The attorney, whom the sons had hired, instructed David to have the trust agreement executed at least a day before the will was executed.
[3] The prenuptial agreement reads, in pertinent part: "In the event Mrs. Wood [who upon the marriage became Ms. Henderson] survives Dr. Henderson, Dr. Henderson will cause to be paid to her for and during her lifetime, or until her remarriage, the income from his security account, which he presently estimates to be a sum of approximately $250,000 . . . . Nothing herein contained shall prohibit Dr. Henderson from changing investments in his security account or from selling securities and investing in other assets at may time after this marriage."