[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 800 
Elizabeth Hayes, Nancy G. Shannon, and Martha Alice Cowan (representatives of the estate of Calhoun Foshee, Jr.), the plaintiffs in the underlying action,[1] appeal from a judgment for Gordon W. Apperson (the executor of Louise Apperson's estate), the defendant in this will contest and action challenging a deed. The plaintiffs argue that Gordon Apperson (hereinafter "Gordon") exerted undue influence on Louise Apperson (hereinafter "Louise") in the execution of her will and of a deed. We reverse and remand.
Gordon is Louise's stepson. He testified that he was retired but that he had previously worked as a bailiff in the Chilton Circuit Court for 12 years. His father, Charles Apperson, married Louise in 1962. The couple had no children together. Charles Apperson died in 1982. He left his entire estate to Gordon, although he had nine other children.[2]
In 1964, during Louise's marriage to Gordon's father, Louise and her brother, Calhoun Foshee, Jr. (hereinafter "Calhoun"), executed a joint will with their mother, in which each left his or her entire estate to the survivors or survivor, with the estate going to the Maplesville United Methodist Church upon the death of the last of Louise, Calhoun, and their mother. Their mother died in 1973. In 1987, Louise and Calhoun executed joint wills in which they left their entire estates to the survivor, with the estate going to the Maplesville United Methodist Church on the survivor's death. Louise and Calhoun had a very close relationship and lived together in their family home after Charles Apperson's death. At the time of her death, Louise was 85 years old. She had amassed approximately $170,000, which was held in several bank accounts, and she owned a one-half interest in approximately 340 acres of land.
Gordon took care of both Louise and Calhoun after his father's death. He had dinner with Louise every Sunday night. *Page 801 
He took both Louise and Calhoun to the doctor, because they were not very mobile. He made repairs to their house and handled all of Louise's business and financial affairs, including collecting rentals on her properties and managing her bank accounts. At trial, Gordon testified that both Louise and Calhoun depended on him fully.
In 1996, both Louise and Calhoun executed a power of attorney in favor of Gordon. Using this power of attorney, Gordon began putting his name on several of Louise's bank accounts. He also gained access to her safety-deposit box, where she kept her will. In January 1999, Louise's health began to fail. She was hospitalized on January 21, 1999, with renal failure. Ultimately, she refused treatment, and she was released from the hospital on February 2, 1999. However, during her stay in the hospital, a handwritten will was produced by Gordon, purportedly signed by Louise, and dated January 25, 1999. Gordon and his wife, Nelly Apperson, had drafted the will. The instrument left Calhoun a life estate in Louise's property, with the remainder to Gordon. According to the plaintiffs' brief, with this will, coupled with the power of attorney, Gordon was able to have his name placed on more of Louise's bank accounts. A handwriting expert who testified at trial indicated that the signature on this handwritten will appeared to be written by someone trying to imitate the writing of a disabled person, and that "Louise" was spelled incorrectly.
In late January 1999, Gordon approached Morgan Reynolds, the attorney who had drafted Louise's 1987 will, on two occasions, asking him to draft another will for Louise. However, Reynolds testified that Louise never contacted him to ask him to draft another will and he never drafted another will.
Subsequently, Gordon drafted additional wills for both Louise and Calhoun, as well as a deed giving Gordon an interest in land owned jointly by Louise and Calhoun. The deed purported to create a joint tenancy with the right of survivorship between Gordon, Louise, and Calhoun. The wills and the deed were typed by James McGowin, a friend of Gordon. Gordon maintains that both Louise and Calhoun instructed him to draft the instruments. Calhoun, however, in a deposition taken shortly before his death, indicated that he had not asked Gordon to draft a will for him. Both wills left the testators' entire estates to Gordon.
Gordon arranged for Louise and Calhoun to execute these two new wills and the deed on February 11, 1999. James McGowin, who typed the wills and deed at Gordon's direction; James's wife, Pauline; and Gordon's wife, Nelly, were to be witnesses. At one point after they arrived at Louise's home, Nancy Shannon, a friend of Louise's, came by to visit. When the notary, Joan Fuqua, arrived, Gordon told Fuqua to leave, and that he would telephone her when he needed her to return. After Shannon left, Fuqua returned. During the trial, Gordon maintained that Louise had contacted Fuqua to serve as the notary; however, Fuqua testified that Gordon was the only person who had contacted her. Fuqua testified she did not know until after the litigation began that she had notarized two wills and a deed that day.
Louise and Calhoun signed the wills and the deed in the presence of Gordon, Nelly, Fuqua, and James and Pauline McGowin. At one point, Gordon instructed Fuqua to ask Louise if she knew what she was doing. Gordon left the room, and Fuqua asked Louise if she knew what she was doing; Louise responded affirmatively, although she did not indicate that she knew she was signing a will or a deed. No one read the wills or the deed to Louise or Calhoun. *Page 802 
Louise died on March 13, 1999. Subsequently, Gordon began probating her February 11 will. When Calhoun learned that the will of Louise's that was being probated was not the joint will she had executed in 1987, he revoked his February 11 will and executed a new will that, like his 1987 will, left his entire estate to the Maplesville United Methodist Church. He also executed a new deed, purporting to revoke the survivorship feature of the estate created in the February 11 deed. He then filed this contest, challenging Louise's February 11 will and the deed, claiming that the signatures on both were forged and, alternatively, that Louise lacked the requisite capacity to execute the instruments. The plaintiffs also argued at trial that both the will and the deed were products of undue influence exerted by Gordon over Louise.
After a bench trial, the trial court found for Gordon, and held that both the will and the deed were valid, finding that Louise was competent to execute the will and the deed and that Gordon had not exerted undue influence over Louise to get her to execute the will and the deed. The trial court issued its order on February 27, 2001. On March 8, 2001, the plaintiffs filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. A hearing on the motion was held on May 2, 2001, and the trial court issued an amended order on August 10, 2001, some five months after the motion to alter, amend, or vacate was filed.[3]
The record does not indicate whether the parties consented to, or whether the court ordered, an extension of time in which to rule on the plaintiffs' motion. When a trial court does not rule on a postjudgment motion within 90 days, it is deemed denied by operation of law under Rule 59.1, Ala.R.Civ.P., and the trial court loses jurisdiction to rule on that motion. Ex parte Hornsby, 663 So.2d 966, 967 (Ala. 1995); Ex parteJohnson Land Co., 561 So.2d 506 (Ala. 1990). Therefore, the August 10, 2001, order is a nullity.
 "Where the trial court hears ore tenus evidence, a presumption of correctness exists as to the court's findings of fact based on that ore tenus evidence; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment."
Griggs v. Driftwood Landing, Inc., 620 So.2d 582, 586 (Ala. 1993) (citations omitted).
We affirm the trial court's holding that Louise was competent when she executed the will and the deed; however, we hold that the trial court's finding that Louise's execution of the deed and the will was not the product of Gordon's undue influence is against the great weight of the evidence. We, therefore, reverse the trial court's judgment as to that issue.
A presumption of undue influence arises when: (1) there is a confidential relationship between a favored beneficiary and the testator, (2) the influence of the beneficiary is dominant and controlling in that relationship, and (3) there is undue activity by the beneficiary in procuring the execution of the will. Burns v. Marshall,767 So.2d 347, 352 (Ala. 2000); Ex parte Henderson, 732 So.2d 295, 298
(Ala. 1999). The trial court held that the plaintiffs *Page 803 
failed to meet their burden of proof in that they submitted no convincing evidence indicating that Gordon had a dominant or controlling influence over Louise, or that there was any undue activity on his part in procuring the execution of the will and the deed. The plaintiffs argue on appeal that the trial court erred in not finding that the plaintiffs met their burden as to these two elements of undue influence.
This Court has noted:
 "`[I]t is next to impossible to produce direct evidence of the exercise of undue influence over another person. Frequently the best evidence which can be offered for either [the] proponent [of a will] or [the] contestant is circumstantial, tending only to support inferences which can be drawn therefrom.' Smith v. Moore, 278 Ala. 173, 177, 176 So.2d 868, 871
(1965); see also Crump v. Moss, 517 So.2d [609] at 612 [(Ala. 1987)] (noting that the evidence required `to raise a presumption of undue influence' can be either direct or circumstantial)."
Henderson, 732 So.2d at 299. Furthermore, a trial court should not look at individual facts or evidence in isolation in determining whether the evidence supports the element of undue influence; rather, "`each fact should be considered in the context of the entire situation and in light of the other two criteria for determining undue influence.'" Henderson, 732 So.2d at 299 (quoting Crump v. Moss, 517 So.2d 609, 613 (Ala. 1987)).
The trial court held that the plaintiffs submitted no convincing evidence indicating that there was undue activity on Gordon's part in procuring the execution of the will. We have described this sort of activity in the procurement of a will as being where the primary beneficiary
 "[is] active in and about the execution and preparation of said will, such as the initiation of the proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witness, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like. . . ."
Reed v. Shipp, 293 Ala. 632, 636, 308 So.2d 705, 708 (1975).
Gordon drafted both Louise and Calhoun's February 11 wills. He had someone type these documents, and he provided the typist with special lined paper. He also arranged for the execution of the instruments, and he selected the witnesses. He asked the notary to leave when a friend of Louise's unexpectedly arrived before the instruments were signed. Furthermore, the wills were not read to Louise or Calhoun before they signed them. In fact, the notary, Joan Fuqua, who was in the room with the testatrix throughout the execution, indicated that she did not know two wills and a deed were executed that day.
Additionally, Gordon attempted in late January 1999 to have Louise's former attorney draft a new will for her. Gordon also drafted the handwritten will presented while Louise was hospitalized, purportedly signed by Louise and dated January 25, 1999.
Calhoun testified that he did not ask Gordon to draft a will for him and that he did not know that he had signed a will or a deed on February 11. Calhoun testified that Louise did not mention on that day that she was executing a new will. He testified that, in light of their extremely close relationship, he believed that she would have told him she was making a new will that would exclude him. The trial court also heard testimony indicating that Calhoun was surprised and disheartened when he learned of the deed and learned *Page 804 
that Louise had purportedly written a will leaving him with nothing.
The trial court, in its order holding that the plaintiffs had failed to meet their burden of proof, noted that "Gordon's undisputed testimony at trial was that he specifically left the room where the documents were being signed and attested." However, the record indicates that Gordon testified that he left the room only when the notary asked Louise if she understood what she was doing. He was present in the room, however, when the documents were being handled and signed.
In light of these facts, we hold that the great weight of the evidence presented at trial demonstrated that Gordon was unduly active in procuring the execution of the will.
The plaintiffs must also prove that Gordon was dominant and controlling in his relationship with Louise. This Court has held on numerous occasions that the fact that a beneficiary controls the personal, business, and household affairs of a testator is evidence of a dominant and controlling influence. Ex parte Baker, 709 So.2d 7, 9 (Ala. 1997);Allen v. Sconyers, 669 So.2d 113, 117 (Ala. 1995); Cleveland v. CentralBank of the South, 574 So.2d 741, 744 (Ala. 1990); Weinberg v. Weinberg,528 So.2d 1136, 1140 (Ala. 1988); Jackson v. Smith, 679 So.2d 1123,1124-25 (Ala.Civ.App. 1996). Gordon testified that he handled all of Louise's banking and business matters. He acted on her behalf in her financial affairs and in the rental of her properties. He placed his name on her bank accounts and had the authority to sign checks on those accounts. He also made repairs to her home and had been given a power of attorney to handle her legal affairs. It is clear, by Gordon's own testimony, that he had control over Louise's business and household affairs and that Louise depended on him to handle those matters.
Not only did Louise depend on Gordon in her business affairs, but Gordon testified that she also depended on him in personal matters and matters pertaining to her health. Louise became increasingly weak as her renal disease progressed; she was almost bedridden. She depended on Gordon to take her to the doctor. In fact, Gordon testified that she was "totally dependant" on him when she reached this state. Total dependency by a testator on the favored beneficiary is again evidence of a dominant and controlling influence. Baker, 709 So.2d at 9.
We hold that the evidence presented at trial indicates that Gordon was controlling and dominant in his relationship with Louise. Gordon had control over Louise's financial and business affairs. She depended on him fully to handle these matters.
Furthermore, the radical deviation from Louise's previous testamentary scheme, which benefitted her brother and her church, to a new scheme, which benefitted only Gordon, evidences undue influence by Gordon. SeeAllen, supra, 669 So.2d at 117 (a radical change from the bequests of previous wills raises the inference that a subsequent will was the product of undue influence). From 1964 to 1999, Louise had devised her entire estate to Calhoun (and to her mother, while she was alive) and then to her church. The February 11, 1999, will, however, leaves Louise's entire estate to Gordon. Calhoun testified that Louise did not tell him that she planned to change the arrangement that they had had since 1964, and that she would not have left him nothing. This radical change in Louise's testamentary scheme is evidence that the February 11 will was the product of undue influence.
We hold that the great weight of the evidence presented by the plaintiffs demonstrates that Gordon exerted undue influence *Page 805 
on Louise in the execution of the February 11 will. Contrary to the trial court's ruling, the plaintiffs proved that Gordon was dominant and controlling in his relationship with Louise, and that he was unduly active in procuring the execution of that will.
The plaintiffs argue that the February 11 deed was also the result of Gordon's undue influence. In proving undue influence with respect to a deed, one needs to demonstrate only the first two elements of undue influence: (1) that a confidential relationship existed between the donor and the beneficiary, and (2) that the beneficiary has exercised a dominant and controlling influence over the donor. Henderson, 732 So.2d at 298-299. The undue influence "`may exist without either coercion or fraud. It may result entirely from the confidential relation, without activity in the direction of either coercion or fraud, on the part of the beneficiary occupying the position of dominant influence.'" Nelson v.Buckley, 567 So.2d 855, 856 (Ala. 1990) (quoting Bancroft v. Otis,91 Ala. 279, 290, 8 So. 286, 289 (1890)). In light of our holding above that the plaintiff demonstrated the elements of undue influence regarding Louise's will, we also hold that the plaintiffs demonstrated undue influence in the execution of the deed.
Each fact standing alone in this case would not prove undue influence. However, as indicated above, we look at each fact in the context of all of the evidence and the other elements of undue influence to determine if the three-pronged test of undue influence has been met. See Crump,supra, 517 So.2d at 613. We recognize and affirm the ore tenus standard, and do not take it lightly. However, we note that much of the testimony we rely on was undisputed. Gordon "adopt[ed] the Statement of Facts as set forth by the appellant," adding only evidence relating to Louise's competency. (Appellee's brief, p. 3.) See Allen v. Crawford, 591 So.2d 887,888 (Ala.Civ.App. 1991) (where evidence is undisputed, the ore tenus presumption of correctness does not apply).
We affirm the trial court's order of February 27, 2001, insofar as it held that Louise was competent when she executed both the will and the deed; we reverse that judgment insofar as it held that Gordon had not exerted undue influence over Louise regarding the execution of Louise's February 11, 1999, will and the deed;[4] and we remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
See, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] Calhoun Foshee, Jr., was the original plaintiff in this action; however, he died during the discovery phase, and the representatives of his estate were substituted as plaintiffs.
[2] Charles Apperson deeded his real property to Gordon before his death, reserving for himself a life estate. Gordon testified that the property was transferred by a deed rather than by naming him as a beneficiary in his father's will to avoid a will contest.
[3] The February 27 order held that the deed created a tenancy in common; however, the August 10 order held that the deed instead created a joint tenancy with right of survivorship.
[4] The plaintiffs also argue in their brief to this Court that Calhoun was also the subject of undue influence in his execution of the deed.This issue was not argued at trial, and the trial court did not rule onit. We therefore cannot consider it on appeal. Norman v. Bozeman,605 So.2d 1210, 1214 (Ala. 1992) ("Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court."). *Page 806