986 So.2d 428 (2007)
Annette BARBAREE
v.
Hubert BARBAREE, John Adams, and Shirley Adams.
2060953.
Court of Civil Appeals of Alabama.
December 7, 2007.
*429 J. David Martin of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellant.
J. Matthew Horne, Clayton, for appellee Hubert F. Barbaree.
L. Shane Seaborn of Penn & Seaborn, L.L.C., Clayton, for appellees John E. Adams and Shirley R. Adams.
BRYAN, Judge.
The plaintiff, Annette Barbaree ("Mrs. Barbaree"), appeals from a summary judgment in favor of the defendants, Hubert Barbaree ("Hugh"), John Adams, and Shirley Adams. We reverse and remand.
Mrs. Barbaree sued Hugh, who is her son, and the Adamses, alleging, among other things, that Hugh had caused Mrs. Barbaree to convey a house and 20 acres of land ("the 20 acres") to him by exerting undue influence on her; that the undue *430 influence voided the deed by which Mrs. Barbaree had conveyed the 20 acres to Hugh; and that, because the deed to Hugh was void, a deed Hugh subsequently executed to convey the 20 acres to the Adamses was also void. After the parties completed discovery, Hugh and the Adamses each moved the trial court for a summary judgment on the ground that Mrs. Barbaree had testified in her deposition that it was her idea to convey the 20 acres to Hugh and that she had voluntarily signed the deed conveying the 20 acres to Hugh. Mrs. Barbaree opposed the summary-judgment motions, arguing that she had submitted substantial evidence tending to prove the essential elements of a claim of undue influence. She also argued that her testifying (1) that she knew that she was conveying the 20 acres to Hugh when she signed the deed conveying it to him and (2) that she intended to convey the 20 acres to Hugh when she signed the deed did not disprove her claim of undue influence because, she said, the determinative issue was whether her intent to convey the 20 acres to Hugh was brought about by his exerting undue influence over her.
Following a hearing regarding the summary-judgment motions, the trial court entered a judgment granting those motions. In pertinent part, the judgment stated:
"This Court finds that the Plaintiff, Annette Barbaree, has failed to present substantial evidence that any of the defendants engaged in undue activity in procuring execution of the April 5, 2005 deed from [Mrs. Barbaree] to [Hugh]. In order to maintain a claim of undue influence, the plaintiff must present substantial evidence of the following three elements: (1) confidential relationship; (2) dominance; [and] (3) undue activity in procuring the execution. Pruitt v. Pruitt, 343 So.2d 495 [ (Ala.1976) ]. The evidence presented in this case indicates that [Mrs. Barbaree] freely and voluntarily executed the deed at issue...."
Mrs. Barbaree appealed to the supreme court. The supreme court then transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Mrs. Barbaree argues that the trial court erred in granting the summary-judgment motions because, she says, she submitted substantial evidence tending to prove the essential elements of a claim of undue influence. We agree.
We review a summary judgment de novo, American Liberty Insurance Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002), and we adhere to the following principles:
"`We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'"
(Quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000).)
Viewing the evidence in the light most favorable to Mrs. Barbaree and drawing the inferences from the evidence that a jury would be free to draw, we find that the evidence before the trial court established *431 the following facts. Mrs. Barbaree is 69 years old and has two children, her son Hugh and a daughter named Paula. Before conveying the 20 acres to Hugh on April 5, 2005, Mrs. Barbaree owned two parcels of land, the 20 acres and a second parcel on which she had operated a beauty parlor ("the beauty parlor").
In October 2004, Paula was living with Mrs. Barbaree in order to take care of her because Mrs. Barbaree suffered from a number of physical and mental-health problems, including diabetes, high blood pressure, dementia, and delusional thinking. In addition, Mrs. Barbaree had suffered several strokes. Mrs. Barbaree and Paula lived in the beauty parlor rather than in the house on the 20-acre parcel because the house on the 20-acre parcel had been burglarized several times and, consequently, they were afraid to live there.
In October 2004, Hugh physically took Paula's keys to the beauty parlor away from her. Hugh then began staying with Mrs. Barbaree at the beauty parlor, assumed control over Mrs. Barbaree's care, and prevented Paula from seeing Mrs. Barbaree. The physician treating Mrs. Barbaree between October 2004 and April 5, 2005, noted during that period that Mrs. Barbaree's judgment and insight were poor, that she was suffering from delusional thinking, and that her mental condition was declining. The physician put Mrs. Barbaree in the hospital for treatment of her mental-health problems; however, Hugh, against her physician's advice, checked Mrs. Barbaree out of the hospital after she had been there only one day. Mrs. Barbaree's physician opined that Mrs. Barbaree had a diminished mental capacity in April 2005 and would have been more susceptible to the influence of another person than she otherwise would have been.
Mrs. Barbaree testified that, after Hugh began staying with her in October 2004, he told her that, if title to the 20 acres were put in his name, potential burglars would probably be too scared to burglarize the house on the 20 acres. Furthermore, Mrs. Barbaree testified that Hugh also told her that, if she executed a deed conveying title to the 20 acres to him, he would take care of the 20 acres for the benefit of Mrs. Barbaree, Paula, and himself; that he would never sell the 20 acres; and that the 20 acres would stay in the family.
Mrs. Barbaree testified that it was her idea to transfer title to the 20 acres to Hugh, but, she stated, it was not her intent to give Hugh sole ownership of the 20 acres; rather, her intent was to convey title to him so that he could take care of the 20 acres for the benefit of Mrs. Barbaree, Hugh, and Paula. Moreover, she testified that, if she had known that Hugh would break his promise not to sell the 20 acres, she would not have put the title to the 20 acres in his name.
Hugh selected an attorney to draft the deed. Mrs. Barbaree admitted that she voluntarily went with Hugh to retrieve her deed to the 20 acres from her safety deposit box at the bank, voluntarily went to the office of the attorney that Hugh had selected to draft the deed, and voluntarily told the attorney that she wanted to put title to the 20 acres in Hugh's name. Mrs. Barbaree further testified that, after the attorney drafted the deed, she voluntarily returned with Hugh to the attorney's office, and the attorney explained to her that the instrument he had drafted was a deed conveying the 20 acres to Hugh. Mrs. Barbaree testified that she voluntarily signed the deed and that she told the notary public that she understood what she was doing by signing the deed.
Mrs. Barbaree testified that, after she signed the deed, she voluntarily took the *432 deed to the probate court for recording. According to Mrs. Barbaree, the probate judge asked her if she was sure she wanted to convey the 20 acres to Hugh, and she responded in the affirmative. Mrs. Barbaree testified that she then voluntarily went to the tax assessor's office where one of the employees asked her if she was sure she understood what she was doing and that she responded in the affirmative.
Mrs. Barbaree testified that she did not tell Paula that she had signed the deed conveying the 20 acres to Hugh because she was afraid that Paula would be upset. Mrs. Barbaree remained on good terms with Hugh until he told her sometime before June 22, 2006, that he was going to sell the 20 acres to the Adamses. Mrs. Barbaree strongly objected to the proposed sale, but Hugh nonetheless proceeded to sell the 20 acres to the Adamses for $50,000, one-half of its appraised value of $100,000. Hugh executed the deed conveying the 20 acres to the Adamses on June 22, 2006.
"It is well established that what constitutes undue influence to procure a deed depends on the facts and circumstances of each case." Brothers v. Moore, 349 So.2d 1107, 1109 (Ala.1977). "In proving undue influence with respect to a deed, one needs to demonstrate only the first two elements of [a claim of] undue influence [with respect to a will]: (1) that a confidential relationship existed between the donor and the beneficiary, and (2) that the beneficiary has exercised a dominant and controlling influence over the donor." Hayes v. Apperson, 826 So.2d 798, 805 (Ala.2002).
"When the parties stand in a confidential relationship and the evidence tends to show that the beneficiary is the dominant party, the law raises a presumption of undue influence and places on the beneficiary the burden to repel the presumption when the transaction is assailed....
"... In determining dominance, it is not a question of whether the party knew what he was doing, had done, or proposed to do, but how the intention of the grantor was produced."
Terry v. Terry, 336 So.2d 159, 162 (Ala. 1976) (emphasis added).
"[The parent-child] relationship is considered confidential and it is presumed that in all transactions between parent and child, the parent is the dominant party. However, this presumption is not conclusive and where it is made to appear that the child rather than the parent is the dominant party then the law raises a presumption of undue influence and casts upon the child the burden of proving that the transaction was fair, just, and equitable in every respect."
Brothers v. Moore, 349 So.2d at 1109 (emphasis added).
Mrs. Barbaree submitted substantial evidence tending to prove that Hugh was the dominant party in their relationship by submitting evidence indicating (1) that Mrs. Barbaree's physical and mental problems made it necessary for her to depend on the care of another person; (2) that Mrs. Barbaree suffered from dementia and delusional thinking; (3) that Hugh had asserted control over Mrs. Barbaree's care in October 2004 and was in control of her care when she executed the deed conveying the 20 acres to him; (4) that Hugh had interfered with the treatment of Mrs. Barbaree's mental-health problems; (5) that Mrs. Barbaree's mental condition had deteriorated between October 2004 and April 5, 2005; and (6) that Hugh had prevented Paula from seeing Mrs. Barbaree between October 2004 and April 5, 2005. This evidence likewise constituted substantial *433 evidence indicating that the usual confidential relationship between a parent and child had been reversed, with the child, i.e., Hugh, having become dominant over the parent, i.e., Mrs. Barbaree. Thus, Mrs. Barbaree submitted substantial evidence tending to prove the two essential elements of a claim of undue influence with respect to a deed, a confidential relationship between Mrs. Barbaree and Hugh and Hugh's dominance in that relationship. See Hayes v. Apperson, supra.
The trial court therefore erred in entering a summary judgment on the ground that Mrs. Barbaree had not submitted substantial evidence tending to prove the third essential element of a claim of undue influence with respect to a willthat Hugh or the Adamses had engaged in undue activity in procuring Mrs. Barbaree's execution of the deed conveying the 20 acres to Hugh; because this case involves the execution of a deed, the law does not require her to prove that essential element of a claim of undue influence with respect to a will. Id.
The trial court also erred in entering a summary judgment on the ground that Mrs. Barbaree voluntarily signed the deed conveying the 20 acres to Hugh because, in determining whether a conveyance resulted from undue influence on the part of the grantee, "it is not a question of whether the [grantor] knew what he was doing, had done, or proposed to do, but how the intention of the grantor was produced." Terry v. Terry, 336 So.2d at 162.
Accordingly, we reverse the trial court's judgment, and we remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing.
THOMPSON, Presiding Judge, dissenting.
I disagree with the conclusion in the main opinion that Annette Barbaree presented substantial evidence of undue influence on the part of Hubert Barbaree. Accordingly, I respectfully dissent.